WILLIAM D. CLAGETT AND CHARLES HILL *vs.* RICHARD AND HENRIETTA M. HALL.—*June,* 1837.

The testator directed that the whole of his estate should be kept together for the payment of debts. He then devised certain lands to his son in fee, and certain *other* lands to the same son and another, in fee, in trust, for the separate use of his daughter (a feme covert) and her children, and authorized the trustees to sell the trust estate in case they deemed it proper. On the day of the execution of the will, the testator conveyed to his son the lands mentioned in the devise to him. Held, that if the conveyance was made under the especial trust and confidence that the grantee should pay the debts of the testator, it would be a revocation of the first mentioned clause in the will—and the fact that the trustees had sold the land devised to them would be evidence that the testator's debts had been paid. Hence

under such allegations the *c. q. t.* need not allege, to entitle her to relief, claiming the execution of the trust, that the debts of the testator had been paid.

Where a deed is charged to be fraudulent, or a secret trust to be its real consideration, and when the consideration recited in it has *not* been disproved, evidence of collateral circumstances, showing an additional consideration not expressed in the deed, may be received to repel the fraud or the secret trust.

Where evidence taken in the court of chancery has not been made the subject of exception under the act of 1832, ch. 302, sec. 5, objections to its competency are excluded from the consideration of this court.

Where it is not alleged or proved, that by fraud, surprise, or mistake, a clause converting an absolute deed into a deed of trust, was omitted to be inserted, it would be inconsistent with the best established principles of the law of evidence, to add a new and important clause, altering the terms of such deed, by the admission of parol evidence showing that such a trust was attached thereto.

It is error to decree payment of the proceeds of the separate estate of the wife to herself and her husband, in opposition to the prayer of the bill for relief, though husband and wife are complainants.

A devise in fee to trustees for the use of the daughter of the testator and her children, with directions that the trustees shall not be compelled to pay into the hands of the husband of the daughter any part of the proceeds of the land, but that the same shall remain in the hands of the trustees during the life of her husband, with power to the trustees to sell the trust estate. The trustees having sold, upon a bill to reinvest and enforce the trust the children of the daughter are not necessary parties. As far as the rights of the children are concerned, the will vests the property absolutely in their mother.

When two are appointed trustees and executors of a will, and one of them renounces, he cannot be made chargeable with a breach of the trust by the other—no proof being adduced that the renouncing party ever received any portion of the trust fund.

When the proceeds of a trust estate are enjoined in the hands of an agent of the trustee appointed to collect, and both principal and agent called upon to bring the money into court, the principal is not ordinarily bound to pay interest during the continuance of the injunction.

A trustee acting improperly with trust funds may be compelled to bring them into court before the time at which, under other circumstances, he would be bound to pay them to the *c. q. t.*

A defendant in a chancery cause cannot be examined as a witness without an order of the chancellor to that effect.

One who has purchased a part of the real estate of a deceased party, in a controversy intended to establish a secret trust as affecting a conveyance of such deceased party, by which the grantee agreed to pay the grantor's debts, is not a competent witness to establish such secret trust, as he thereby provides a fund for the payment of debts, and so far exonerates his own purchase.

Clagett and Hill *vs.* R. and H. M. Hall.—1837.

When the substantial merits of an equity cause will not be determined by reversing or affirming the decree of the court of chancery or the purposes of justice advanced by doing either, this court remanded the cause to amend the pleadings, make new parties, state further accounts, and take such further testimony as may be necessary.

APPEAL from the court of *Chancery.*

*Joseph W. Clagett,* of *Prince George's* county, by his last will and testament, executed on the 17th April, 1828, and admitted to probat on the 1st May, 1830, declared among other matters as follows:

" It is my will and desire, and I do hereby will and direct that the whole of my estate, both real and personal, be kept together by my executors, until all my just and lawful debts, funeral expenses and cost of administration are fully paid and satisfied."

The testator then devised in fee to his son, *William D. Clagett,* the land on which " I now reside and all the land that lies contiguous and adjoining thereto"—farming utensils and stock on said land, at testator's death—certain negroes— all the household and kitchen furniture and plate, also as follows:

" *Item,* I give and devise unto my daughter, *Susanna Maria Hill,* half of my lands in *Calvert* county, to her and her heirs for ever," and certain negroes, &c.

" *Item,* I give and devise unto my son, *William D. Clagett,* and my son-in-law, *Charles Hill,* and their heirs for ever, one-half of all my lands in *Calvert* county, in trust, and to and for the use and benefit of my daughter, *Henrietta Maria Hall,* and her children ; and my will and desire is, that the said trustees shall not be compelled to pay into the hands of *Richard Hall,* the husband of the said *Henrietta Maria Hall,* any part of the proceeds of the said land, but that the same shall remain in the hands of the said trustees during the life of the said *Richard Hall,* and payments to my daughter *H. M. Hall,* shall be sufficient to discharge said trustees. And I do hereby authorize and empower the said trustees, to convey the said land (*in case they should think proper to sell*

*the same*) to the purchaser or purchasers thereof by a good
and sufficient deed or deeds.

"*Item*, all the rest and residue of my personal estate, I
will and direct, shall be equally divided into two parts ; one
part thereof I give to my daughter *S. M. Hill ;* and the other
half to my son, *W. D. Clagett*, and son-in-law, *C. Hill*, and
their heirs, in trust, to and for the use and benefit of my
daughter, *H. M. Hall*, and her children ; with like provisions
as to her husband and payment to be as before, and I do
hereby authorize and empower the said trustees to sell and
dispose of the said *personal* property, and to vest the proceeds
of *such sale* in other property, or bank stock, if the said
trustees shall think it most advantageous so to do."

The testator then appointed *W. D. Clagett*, and *C. Hill*,
his executors.

By a deed executed on the 17th April, 1828, (the day of
the execution of the will, the testator,) *Joseph W. Clagett*, " as
well for and in consideration of the natural love and affection
which he, the said *Joseph W. Clagett*, hath and beareth unto
the said *William D. Clagett*, also for the better maintenance
and support and preferment of him, the said *Willian D.
Clagett*, and also for and in consideration of the sum of five
dollars, &c. conveyed unto *William D. Clagett*, in fee, all the
lands and personal property mentioned in his last will and
testament, with a covenant for quiet enjoyment and warranty
from all persons claiming under the grantor.

On the 25th November, 1832, *Richard Hall*, and *Henrietta*,
his wife, filed their bill in chancery, which was subsequently
amended, charging that on the day of the execution of the
said *J. W. Clagett's* will, that the said *W. D. Clagett*, ob-
tained from the testator, a deed of conveyance of all his
property, except a tract of land in *Calvert* county, that said
deed was obtained by fraudulent pretences, and undue in-
fluence ; and also that it was made under the special trust
and confidence, that the said *W. D. Clagett*, should pay the
debts of the grantor ; that *W. D. Clagett*, sets up the deed as
a revocation *pro tanto* of the will, and is endeavouring to

divert the fund intended for the benefit of *Henrietta M. Hall*, the complainant, and her children, to the payment of the debts of the testator, contrary to the intention of the testator, and in violation of the said *W. D. Clagett's* contract with *J. W. Clagett.* That the land conveyed to *W. D. Clagett*, by the deed of April, 1828, with the assets which came to the hands of *W. D. Clagett*, are more than sufficient to pay the debts of *J. W. Clagett.* That the land devised to the executors of *J. W. Clagett*, in trust for complainant, were sold in January, 1831, for $3,328.64—that the purchaser gave his bond for the same—and that since the sale, *James Kent*, the purchaser has assigned to the said *W. D. Clagett* certain bonds, notes, and accounts, due by certain persons to him, to be applied when received, in satisfaction of said *Kent's* bond to said *W. D. Clagett* and *C. Hill*—that the said bonds, notes, and accounts, are in the hands of a certain *Vernon Dorsey*, *Esq.* That the said *W. D. Clagett* hath assigned the said bonds, notes, and accounts, to the said *Charles Hill*, who had notice of complainant's claim, to secure the payment of a debt due by *W. D. Clagett* to *Charles Hill*, or to indemnify the said *Charles Hill* against some liability incurred by him on account of *W. D. Clagett.* That such assignment is fraudulent and void, and that said *Charles Hill* is responsible for the whole of the fund, or such part as he has received. The bill then claimed a discovery of the bonds and notes so assigned and amounts due, and an injunction to prevent *Hill* and *Clagett* from receiving, and *Vernon H. Dorsey* from paying to them any part of said bonds, and that they should bring the sums in hand into court; prayer for *subpœna* against *Clagett*, *Hill*, and *Dorsey*, for an execution of the trust and for general relief.

The answer of *William D. Clagett* denied that he ever claimed title except under the deed to him from *J. W. Clagett* —all fraud—and undue influence; and charged that he gave a valuable consideration, to wit: 226 acres of land devised to him, called *Melwood*, by *Susanna Maria Digges*—that she also bequeathed to him a number of negroes, of which *J. W.*

*Clagett* had the use of for eight or ten years, and the proceeds of their labour applied in payment of his debts—that *J. W. Clagett* owning also a part of *Melwood*, united with this defendant in conveying it to his son-in-law, *Benjamin H. Clarke*, in exchange for the lands in *Calvert* referred to in the bill— that the defendant sold his negroes and applied the proceeds, $2,350, in payment of *J. W. Clagett's* debts—that he paid also $2,000, and for one of the negroes conveyed to him by *J. W. Clagett*, gave him another—that as executor he did not return an inventory of any part of the property devised to him. The answer then denied that the deed of *J. W. Clagett* was made in trust to pay debts of the grantor, or that the defendant had agreed to pay them—that no negroes devised to *H. M. Hall* were ever delivered to her, though three of them were suffered to remain in her service, as she was needy and his sister, and he did not desire to deprive her of their services as long as he could avoid it. The answer admits the sale of the lands to *James Kent*, the receipt of his bond, and the assignment of securities delivered to *Vernon H. Dorsey, Esq.* to be collected and applied to the payment of the purchase money. That shortly after the land was sold, being anxious to raise a sum to pay off the judgments against *J. W. Clagett*, he applied to *C. Hill*, to negotiate a loan for him, who became his security, and obtained for him from the *Bank of the Metropolis*, a loan of $5,000, and from individuals, a loan of $3,000; which sums were applied to *J. W. Clagett's* debts; that he did not assign *Kent's* notes or securities to him, *Hill*, but executed to him a mortgage of land and negroes. That at the time the loan was effected, the defendant agreed with the *Bank of the Metropolis*, that as the money was collected on the bonds and notes in question, it should be paid to the bank, in satisfaction of the loan made by it; and sometime afterwards, that institution made *Charles Hill* its agent, to collect the same, and in that character he gave said *Hill* an order on *V. Dorsey*, to receive the money as collected on said bond, he denies any assignment of the bonds, &c. to said

*Charles Hill.* That one-half of the purchase money of the land has thus been paid to the bank, and about $1,700 directly to creditors of *J. W. Clagett;* that defendant determined to sell the land, and with the proceeds, and his own estate, pay the debts of his testator, and so soon as those debts were paid, to invest one-half the amount for which said lands was sold, for the benefit of his said sister; and this is still his intention. That a portion of the debts of his testator yet remain unpaid, and according to his intention the investment prayed for was not to be made until the debts were fully paid. Prayer to be dismissed.

The will of *Susanna Maria Digges* was filed with this answer.

The deed of *Joseph W. Clagett* and *W. D. Clagett,* of the 19th of May, 1827, for *Melwood,* to *Benjamin H. Clarke,* his wife and children, in consideration of $10,000, was also filed with the answers.

The answer of *Charles Hill* showed, that he had renounced the executorship of *J. W. Clagett's* will, that he did not sell the land of *J. W. Clagett,* and reiterated the allegations of *W. D. Clagett,* in relation to the proceeds and application of the the bonds and purchase money of the land sold by *W. D. Clagett.*

No answer was filed by *Vernon Dorsey.*

The evidence taken in the cause, so far as it is material, will be found in the opinion delivered in this court.

On the 10th of November, 1834, the chancellor (*Bland,*) decreed, that the deed of the 17th April, 1828, from *J. W. Clagett* to *W. D. Clagett,* was void as regards the rights and interests of the plaintiffs—that the defendants, *W. D. Clagett, Charles Hill,* and *Vernon Dorsey,* together and respectively, account with the plaintiffs, *Hall and wife,* of and concerning the real and personal estate devised by *J. W. Clagett* unto *Henrietta M. Hall,* and of the proceeds of the land sold by *W. D. Clagett,* a part of the securities for the payment of the purchase money of which, have passed into the hands of the said defendants, *Charles Hill* and *Vernon Dorsey.* The de-

cree then referred the cause to the auditor, with direction to state an account accordingly, from the pleadings and proofs now in the cause, and from such other proofs as might be laid before him, except the deposition and testimony of the defendant, *Charles Hill,* which was rejected—further proof was allowed to be taken on the usual terms, and the injunction granted was continued till final hearing or further order.

After this decree the auditor stated accounts, and exceptions, showing the points relied on before the chancellor, were filed by consent; the matters to which they relate appear in the opinion of this court.

The defendants, *William D. Clagett* and *Charles Hill,* appealed from the decree of the chancellor.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

DUCKETT, for the appellants, contended:

1. That neither of the appellees could derive any benefit from the alleged trust in the will of *Joseph W. Clagett,* until his debts were paid, which is neither alleged nor proved.

2. That the deed from *Joseph W. Clagett* to *William D. Clagett,* of April, 1828, was founded on a good and valuable consideration, and there is no evidence to show, that the grantee took under the will, and not under the deed—and as the debts of the testator exceeded the value of the property in *Calvert* county, and his other property, not disposed of by the deed—the whole was applicable to the payment of debts.

3. That if the decree of the chancellor shall be affirmed, the fund will pass into the hands of *Richard Hall,* the husband of the female complainant, contrary to the clear intention of the testator.

4. That the bill is defective is not making the children of the female complainant, parties, and in the omission of other necessary parties.

5. That *Charles Hill* having renounced the trust could not be either jointly with *William D. Clagett,* or separately charged for a breach of trust by the latter if he has been

guilty of one, and ·that the chancellor erred in so charging him.

6. It being apparent that *Charles Hill* was *bona fide* under the impression that the *Calvert* property was liable·to be sold for the payment of debts, he is not ·to be charged, because such an application has been made; especially as the estate of *William D. Clagett* is neither alleged nor proved to be insufficient.

7. That the decree is defective in requiring *Clagett* to pay into court, the principal fund against the express wish of the testator, that it should remain in his hands, there being no allegation in the bill or proof in the cause, that the fund is in danger.

8. That the bill is defective in not calling upon the executors to account, and in not calling on the creditors to exhibit their claims.

9. That the decree is erroneous in declaring the deed from *Joseph W. Clagett* to *W. D. Clagett* void, there being no prayer in the bill that it shall be declared void.

10. That the .chancellor erred in rejecting the testimony of *Charles Hill* and in admitting the testimony of *James Kent*, the former being a competent, and the latter an incompetent witness.

J. JOHNSON, for the appellant,

Argued the 1st, 2d, 4th, 5th, 6th, and 10th points. On the question that the appellants were not confined to the consideration expressed on the face of the deed of the 17th April, 1828, he cited : 1 *Har. and Gill*, 175, 202. To show that the recitals of the deed did not operate by way of estoppel. 3 *Thos. Co. Lit.* 467, 468. He contended that *Clagett* took under the deed and not under the will which was ambulatory. The words give, grant, enfeoff, import a delivery of possession. 3 *Thos. Co.* 332. 8 *Rep.* 82. The deed and will are not one instrument. 2 *Sch. and Lef.* 501. The short copies of judgments are not objected to. Upon the question of want of parties. 3 *John. Cases*, 311. That *James Kent*, the pur-

chaser was a necessary party bound to look to the application of the purchase money. 1 *Pow. on Mort. ch.* 9, 240, 241. 2 *Fonb. Eq.* 152, 153. 1 *Mad. Ch. Prac.* 443, 545. *Sug. on Ven.* 368. 2 *Vernon,* 271. 4 *Ves. Jr.* 97. 8 *Wheaton,* 421. *Charles Hill* not responsible as trustee. 2 *Mad. C. P.* 162. The evidence of *Kent* was excepted to in chancery. The act of 1832 is complied with, and his evidence as a party interested was properly rejected. Hence the answer remains unimpeached.

If the *Bank of Metropolis* is a necessary party, the court may remand the cause.

ALEXANDER, for the appellees, contended :

1. That the deed from *Joseph W. Clagett* to *William D. Clagett,* being dated on the same day with the will of the said *Joseph W. Clagett* and conveying the same property as is devised in the will to *William D. Clagett,* is to be considered as a part of the testamentary disposition of the said *Joseph W. Clagett.*

2. That the said *William D. Clagett* having sold the property devised to the appellee, *Henrietta M. Hall,* in virtue of the trust in the testator's will, is bound to appropriate the proceeds in the manner directed by the will for the benefit of appellee, *Henrietta M. Hall.*

3. That there is sufficient evidence in the cause that the appellant, *William D. Clagett,* claimed the property devised to him by his father, under the will, and not under the conveyance.

4. That the appellant, *Hill,* is chargeable with the proceeds of the sale of the land in the proceedings mentioned, he having notice of the breach of trust on the part of the appellant, *Clagett.*

5. That there is no evidence in the cause to shew that *Joseph W. Clagett* owed or was liable for any of the debts due on the judgments, short copies of which are returned with the commission ; and he cited :

Act of 1825, ch. 117. 1763, ch. 13. 1729, ch. 8, sec. 5.

12 v.9

1 *Ves. Sr.* 127.    2 *Ves. Jr.* 221.    1 *Williams on Ex.* 54.    1 *Simon and Stuart,* 105.    16 *Ves.* 151.    3 *Swan,* 699.

PRATT, in reply, cited:

2 *Gill and John.* 458.    1763, *ch.* 13.    1 *Har. and Gill,* 202.

DORSEY, Judge, delivered the opinion of the court.

The first reason assigned by the appellants for the reversal of this decree is, that the appellees nor either of them can derive any benefit from the alleged trust in the will of *Joseph W. Clagett* until his debts are paid, which is neither alleged or proved.    As far as this objection rests upon the imputation of defective allegations in the bill, it does not appear to be sustained.    If all the matters charged in the bill were true, it would not be requisite to entitle the appellees to the relief sought either to allege or prove the non-payment of the debts of the testator.    The appellees charge that the deed from *Joseph W. Clagett* to *William D. Clagett,* made under the special trust and confidence that the grantee should pay the debts of the testator, which fact, if established, would in effect be a revocation of that clause in the will that directs the testator's real and personal estate to be kept together until his debts should be paid.    And the further allegation of the sale of the land devised in trust for *Henrietta M. Hall* and her children, is of itself evidence that the debts were paid.

The second reason is, that the deed from *Joseph W. Clagett* to *Wm. D. Clagett* of the 17th of April, 1828, was founded on a good and valuable consideration, and there is no evidence to shew that the grantee took under the will, and not under the deed, and as the debts of the testator exceeded the value of the property in *Calvert* county, and his other property not disposed of by the deed, the whole was applicable to the payment of the debts.    In support of the allegations in the bill, that the deed of the 17th of April, was obtained by fraudulent pretences and undue influence exercised over the testator, no testimony has been offered; and the answer of

*William D. Clagett*, which is controlling evidence upon this subject, disproves such an assertion. That there was in the execution of this deed, a secret trust that the grantee should pay the debts of the grantor, some equivocal, inconclusive testimony has been offered, rather by way of inference than as direct proof. It has been proved that *William D. Clagett* sold the trust property under the will, well knowing the inadequacy of the testator's estate to pay his debts, and that frequently since that period he had admitted it to be his intention to invest the proceeds of sale, as directed by the will in trust for his sister and her children. From these acts and admissions an inference might arise of the existence of the secret trust in relation to the deed. To repel which, the will of *Susanna Digges*, the deed from *Joseph W. Clagett* and *William D. Clagett* to *Benjamin H. Clarke* and others, and also other testimony have been offered by *William D. Clagett*, to show that the deed of the 17th of April was executed upon a full and adequate consideration, wholly inconsistent with the existence of the secret trust aforesaid. But to such will, deed, and testimony, the appellees' solicitor have objected on the ground that the deed of the 17th of April being impeached for fraud, no evidence of any other consideration than that expressed in it can be received to sustain it. And the case of *Betts and wife vs. The Union Bank*, and many other cases, have been adduced to support the objection. But the authorities referred to have no application to the question on which they have been produced. The deed before us has not been rendered void and inoperative by disproving the consideration expressed in it. The proof is not offered to ingraft into it a new consideration, without which it ceases to have any legal existence or validity, nor to add to, vary or change the written instrument by proving a consideration not expressed in it, but it is offered to contradict the evidence (if any had been produced) of fraudulent pretences and undue influence exercised over the testator; and to repel and discredit the charge of secret trust to pay debts. But an unanswerable reply to the objection to

the evidence offered is, that it was not taken by exception in the Chancery court, agreeably to the requisition of the act of 1832, ch. 302, sec. 5, and is therefore excluded from the consideration of this court. Had the testimony given by the appellees to prove the secret trust been objected to in the court below as inadmissible for that purpose, the objection must have been sustained. The effect of its introduction was in opposition to one of the best established principles of the law of evidence, to change and add to a written agreement by a new and important clause altering the terms of the contract; the omission to insert which in said agreement was neither alleged or proved to have been the result of fraud, surprise, or mistake.

But reject if you please the evidence now objected to by the appellees, and it avails them nothing. Their inferential proof of this secret trust is annihilated by the answer of *Wm. D. Clagett,* and disproved by the deed of the 17th of April itself, which contains a covenant warranting the property conveyed to the grantee free, and discharged from all claims and incumbrances arising under the grantor.

The effort which has been made to shew that the deed of the 17th of April is to be regarded as a part of the last will and testament of *Joseph W. Clagett,* cannot be supported. The deed upon its face bears no mark of such testamentary character. When viewed in connection with the will no such inference can be drawn from their inspection. There is nothing in the proof in the cause to sustain it. The deed itself demonstrates its untruth.

We do not design at this time to express any opinion whether *Wm. D. Clagett* (when the proceedings in the cause shall have been placed in that situation in which they ought to be before a final adjudication is made upon the rights of the parties) will be permitted to apply the proceeds of sale of the trust property to the payment of the testator's debts; all we mean to say is that if the facts stated in his answer be substantiated, the proceedings and proofs in the cause as

now presented to us, interpose no estoppel or inflexible principle of equity to debar him from such relief.

In the discussion of the third objection it has been conceded to the solicitors on both sides, that the decrees of the chancellor are erroneous in ordering the fund in controversy to be brought into court *to be paid to the complainants.* Such a disposition being in direct opposition to the prayer for relief, which he has been called on to grant, and to the will of *Joseph W. Clagett,* which in the most guarded and explicit manner excluded one of the complainants from the receipt and participation in any part of the fund.

The fourth reason is that the bill is defective in not making the children of the female complainant parties, and in the omission of other necessary parties. There can be no error in not making the children of *Henrietta M. Hall* parties, because it does not appear that she has any children, and if it did so appear they ought not to be made parties, the terms of *Joseph W. Clagett's* will vesting the property in controversy absolutely in the mother so far as the rights of her children are concerned. But there is error in not making the *Bank of the Metropolis* a party; the answer of *Wm. D. Clagett* shewing its interest in the fund on which the decree of the court is to operate. The bill contains no specific prayer for an account of personalty. If it did, or if the complainants below under the allegations in their bill and the general prayer for relief require such an account, *Susanna Maria Hill* must be made a party. There is no occasion to make her a party on account of any interest she once had in the moiety of the *Calvert* county lands.

The sufficiency of the fifth reason, which is that *Charles Hill* having renounced the trust, could not be either jointly with *William D. Clagett,* or separately charged for a breach of trust by the latter if he has been guilty of one, and that the chancellor erred in so charging him we think cannot be denied. His answer, which is responsive to the bill, and which is confirmed by the testimony of *James Kent,* taken by the appellees, shews his renunciation of the trust to which

he was appointed in conjunction with *William D. Clagett*, and there is no proof whatever that any portion of the trust fund ever came to his hands. The auditor dealt with *Charles Hill* accordingly. In making his audit of the trust fund he stated no account against him, there being nothing in the record to warrant it. In his account A, he charged *Wm. D. Clagett* with the entire price for which the land was sold, with interest thereon from the day of sale, although according to the proofs in the cause a considerable portion thereof was staid by an injunction, issued in this cause in the hands of *Vernon H. Dorsey*, a co-defendant, who at the prayer of the appellees was enjoined from paying the same either to *Wm. D. Clagett* or *Charles Hill*, and by the prayer of the bill the decree was asked for to compel said *Dorsey* to bring the money into court for investment. This injunction was continued for upwards of two years and a half, until the final decree, when the chancellor ratified account A, as above stated, which charged *William D. Clagett* alone, but further decreed not only against *Wm. D. Clagett* but against *Charles Hill*, also requiring them to bring into court the whole amount of account A, although it appeared by the auditor's accounts B and C, that a part of that amount was still in the hands of *Vernon H. Dorsey*, under the operation of the injunction. Against *Vernon H. Dorsey* no decree was passed. Thus, *Hill*, as trustee, was ordered to bring into court a large sum of money, with interest thereon, not one cent of which was it in proof that he had ever received, or ever ought to have received, and to pay a sum of money, with interest thereon, for two years and a half, which by the positive injunction of the Chancery court issued in this cause, remained during that time in the hands of another, and which he, *Hill*, by the same injunction, was prohibited from receiving, and never did receive or ought to have received. As to this last mentioned sum of money, and interest, *Wm. D. Clagett* shared the same fate with *Charles Hill*, and his condition differed not materially from that of *Hill*, except that but for the issuing

of the injunction he was authorized to have received that sum of money, without interest, from *Vernon H. Dorsey.*

Our opinion of the sixth reason is sufficiently expressed in the views we have taken of the fifth.

We do not think the decree of the chancellor erroneous on the ground assigned in the *seventh* reason. Had the conduct of *William D. Clagett* been such as it is alleged to have been in the bills of complaint, and his situation as such as from the proofs in the cause it would be fair to presume it to be, and had the complainants shewn themselves entitled to the fund in question, we think the chancellor would have been authorized in ordering it into court.

The objection raised by the *eighth* reason as to the form of the bill of complaint we do not think well founded. Neither by any of the specific prayers in the bill, nor by any of the proceedings under it, have the complainants claimed any thing of the defendants on account of the personal estate. They could have no motive therefore in calling on the executor to account for the personal estate of the deceased. Nor can a reason be assigned why the complainants should call on the creditors to exhibit their claims. So far from admitting the rights of such claimants to the whole or any part of the fund in litigation, the bill of complaint is predicated upon a total denial of such rights, and a call for such account and exhibition by the appellees, would have been an act of great inconsistency. Not so on the part of the appellants. Their defence could only be sustained by the statement of such an account and the proof of the debts due by the testator. It is for them, therefore, and not the opposite party, to ask at the hands of the chancellor an opportunity of taking such account and exhibiting such proof.

We concur with the appellants in their assertion in their ninth reason, that the decree is erroneous in declaring the deed from *Joseph W. Clagett* to *William D. Clagett* void, but not for the reason assigned. Had the appellees established by proof the allegation in their bill that the deed was obtained by fraudulent pretences and undue influence, exercised

over the testator, without any specific prayer for that purpose, but under the prayer for general relief, it was competent for the Chancery court to have vacated the deed. The error which we in this respect impute to the decree is, that it vacates the deed under this allegation without a scintilla of proof to support it, and regardless of the defendant's (*Wm. D. Clagett's*) answer which positively denies it.

We cannot concur in the appellants' tenth reason " that the chancellor erred in rejecting the testimony of *Charles Hill*," because *Hill* being a defendant in the cause, and being examined as a witness without the pre-requisite order of the court for that purpose, his testimony was properly rejected on that ground. But it was inadmissible on another ground, he had a direct interest in defeating the claim of the appellees and sustaining that of *William D. Clagett*, his co-appellant, who had pledged the fund in controversy to secure a debt due by him to the *Bank of the Metropolis*, and for which the witness offered was liable as the endorser. But we are of opinion that the chancellor erred in permitting the whole evidence given by *James Kent* to go to the auditor in his statements of the accounts directed by the decree of the 10th of November, 1834, a great part of the testimony of the witness appearing to be inadmissible. In stating the accounts ordered, the claims of the creditors of the testator upon the fund in dispute was a fit subject for the consideration of the auditor, notwithstanding they were matters put in issue by the bill and answers. The witness, *Kent*, was interested in establishing the secret trust alleged in the amended bill, as by securing to the creditors payment of their demands out of the property conveyed by the deed of the 17th of April, he so far rescued the lands conveyed to him in *Calvert* county from the pursuit of the creditors. So far also as to the evidence offered of the notes assigned to *William D. Clagett*, and the sperate payment made upon each assigned note, such testimony was inadmissible without producing the assigned notes or satisfactorily accounting for their non-production, and on proof of service of the appropriate notice to

produce them should they have been in the possession of the appellants so as to let in the secondary evidence which was offered. The same objection applies to that part of the witness's answer to the sixth interrogatory, which alleges the execution of the bond by *William D. Clagett* as trustee of *Mrs. Hall,* and of the deed from *Clagett, Hill* and wife, to *James Kent.* The chancellor therefore on the appellants' exception to the testimony given by *James Kent,* ought to have withheld the following portions of it from the auditor, viz: the answers of the witness to the third interrogatory, and to the fourth, except the proof of the cash payment of $1,500, and to the fifth, and also all that part of the answer to the sixth interrogatory which alleges the execution of the deed and bond above mentioned, and the assignment and payment of the notes mentioned in his answer to the preceding interrogatory. From an attentive examination of the record in this case, we are satisfied that the reversal or affirmance of the decree passed herein, cannot take place without the risk of doing injustice to one or the other of the parties, and have therefore adopted the following order:

It appearing to this court that the substantial merits of the cause will not be determined by the reversing or affirming the decree of the chancellor, and that the purposes of justice will be advanced by so doing, it is thereupon, this twenty-first day of December, 1837, ordered and adjudged by the authority of this court that this cause be remanded to the court of Chancery for the purpose of amending the pleadings, making the *Bank of the Metropolis* by its proper corporate name a party defendant, and that such other and further accounts be stated by the auditor, and such further testimony be taken therein before a commissioner or commissioners, the auditor or otherwise, and other proceedings had under the direction of the chancellor, as shall be necessary for determining the cause upon its merits.

CAUSE REMANDED TO CHANCERY UNDER ACT OF 1832, *ch.* 302.