ELYSVILLE MANUFACTUR-
ING COMPANY
vs.
THE OKISKO COMPANY.      MARCH TERM, 1849.

[PAROL EVIDENCE TO CONTRADICT A RECEIPT IN A DEED—ACTS OF A CORPOR-
ATION HOW EVIDENCED—SUBSCRIPTION TO STOCK.]

IT is the undisputed law of this state, that the receipt in a deed, acknowledging the payment of the consideration money, is only *prima facie* proof, and may be contradicted or explained by parol evidence.

When a deed is rendered inoperative and void by disproving the consideration, expressed in it, evidence of a different consideration will not be received to set it up.

But, where a party maintains the validity of a deed, and seeks, upon the allegation, that the consideration money has not been paid, to enforce its payment, by the assertion of the vendor's lien, evidence may be admitted to prove that he has been satisfied for the purchase money, by receiving something else as an equivalent therefor.

The rules of evidence in regard to explaining, or varying, or contradicting written evidence, are the same in courts of equity as in courts of law.

It is well settled, in this country, that the acts of a corporation, evidenced by a vote, written or unwritten, are as completely binding upon it, and as full authority to its agents, as the most solemn acts done under the corporate seal; and, that promises and engagements may as well be implied from its acts, and the acts of its agents, as if it were an individual.

A vote or resolution appointing an agent, need not be entered on the minutes, but may be inferred from the permission or acceptance of his services.

The president of one corporation subscribed for stock in another corporation. The certificate for the stock was received by the agent of the former, and retained by it; and the stock, on two occasions, was voted by an officer or member of the former corporation. It was HELD—that from these facts, the authority to the president to make the subscription might be presumed.

[The bill in this case, alleged, that on the 20th August, 1846, the complainants executed to the defendants, a deed of certain property, lying partly in Howard district, and partly in Baltimore county, for the sum of $25,000 ; that the defendants had taken possession thereof, and peaceably occupied the same ever since ; that, although a formal acknowledgment of the receipt of the purchase money was written on the deed, it had never in fact been paid ; and that, the defendants were threatening to sell the same, without regard to the rights of the complainants.    The bill prayed for an injunction, to restrain the defendants from selling ; and also, that the property might be sold under the direction of the court, to satisfy the complainant's claim.

The answer denied that the said purchase money was still due, and in explanation stated, that in the month of July, 1845, the Elysville Manufacturing Company, consisting of the five Messrs. Ely, the owners of the property in dispute, being in want of means to conduct their operations, agreed with certain merchants in Baltimore, that if the latter would join with them and contribute the sum of $25,000, the company would convey to the association thus formed, the said property, and in consideration thereof, hold a like sum of $25,000 in the capital stock of the association thus formed ; that the sum proposed was raised, in pursuance of the agreement ; that this association was afterwards incorporated by the name of the Okisko Company ; that the Elysville Manufacturing Company, by Thomas Ely, its president, subscribed for two hundred and fifty shares of the capital stock, amounting to the sum of $25,000, as shown by an agreement filed with the answer : that the subscribers, other than the complainants, paid for their stock in cash, and that a certificate for two hundred and fifty shares was delivered to the complainants, on the execution of said deed, and by them received, as the true and only consideration therefor.

A great deal of testimony was afterwards filed in the cause, and exceptions to its admissibility were taken and argued at the hearing of the motion to dissolve the injunction, the nature of which will appear from the Chancellor's opinion.

As to the statement in the answer, that the consideration money of the deed had been paid in stock, the Chancellor said :]

THE CHANCELLOR:

It is the undisputed law in this state, that the receipt in a deed, acknowledging the payment of the consideration money may be contradicted; that it is only *prima facie* proof, and is exposed to be either contradicted or explained by parol evidence; and in this respect constitutes an exception to the general rule, which protects written evidence from the influence of such testimony. *Higden* vs. *Thomas,* 1 *H. & G.,* 139; *Wolfe* vs. *Hauver,* 1 *Gill,* 85.

But, although the receipt in the deed, acknowledging the receipt by the vendor of the consideration, may be disproved by parol, and an action maintained by him, for the purchase money on the production of such proof, still it is insisted, that the opposite party, the vendee, is held to the proof of the consideration expressed ; and that he will not be allowed to support the instrument, by setting up a different consideration, repugnant to that expressed.

In the case of the *Union Bank* vs. *Betts,* 1 *Harr. & Gill,* 175, the Court of Appeals decided, that were a deed was impeached for fraud, the party to whom the fraud is imputed will not be permitted to prove any other consideration in support of the instrument.

The consideration offered to be proved in that case, was marriage, and the attempt was to set up marriage as the consideration, in lieu of the money consideration expressed ; but this was decided to be inadmissible, the deed being impeached for fraud. The proof, if admitted, would have changed the deed from one of bargain and sale, to a covenant, to stand seized to the use of the grantee. In the case of the Union Bank and Betts, the disproof of the consideration expressed, had rendered the deed fraudulent and void as a bargain and sale, and by admitting the parol proof offered, this void instrument would have been re-established as an instrument of a different character.

In every subsequent case decided by the Court of Appeals, the case of the Bank and Betts, is explained in this way; that is, as having decided, that when a deed is rendered inoperative and void by disproving the consideration expressed in it, evidence of a different consideration will not be received, to set it up. *Clagett and Hill* vs. *Hall*, 9 *G. & J.*, 91 ; *Cole* vs. *Alberts and Runge*, 1 *Gill*, 423.

But the. question presented in this case, is of a different description. This deed is not impeached for fraud, as in the case of the Union Bank vs. Betts, and Cole vs. Albers and Runge. The complainants in this case maintain the validity of the deed, and seek, upon the allegation, that the consideration money has not been paid, to enforce its payment by the assertion of the vendor's lien. And the question is, whether in a court of equity he can be permitted to assert this lien, and compel payment in this way of the consideration expressed in the deed, if it appears by the evidence, that he has been satisfied for the purchase money, by receiving something else as an equivalent therefor.

In the case of *Wolfe* vs. *Hauver*, 1 *Gill*, 84, which was an action of assumpsit, to recover the value of lands sold and conveyed, but not paid for, objection was made to the admissibility of parol evidence to disprove the acknowledgment in the deed; but the court admitted it, upon the ground, that such acknowledgment was only *prima facie* evidence, and the plaintiff, the vendor, obtained the verdict and judgment. In that case as here, the deed was not impeached for fraud, nor was the evidence of non-payment offered to render it inoperative and void; and the Court of Appeals say, "the introduction of the evidence proposed to be offered, neither changes nor affects any right transmitted in the property conveyed by the deed; it operates no change in the legal character of the instrument, nor in any manner affects injuriously any part of the deed, as a conveyance ; the receipt of the purchase money is no necessary part of the deed, as it would in every respect be as valid without it as with it."

The deed then being valid, and passing the legal title, and

the bargainor therein not impeaching it as fraudulent, but claiming the aid of this court to enforce his lien as vendor, to recover the purchase money expressed in it, the question is, shall he be permitted to do so, if upon the evidence it is shown that he has received, not in money, but in something else of value, what at the time he considered as an equivalent for the money?

Suppose, in the case of Wolfe vs. Hauver, the defendant, the purchaser, could have shown that he had paid, and the plaintiff had received, as an equivalent for the two thousand dollars, (the consideration expressed in the deed,) merchandise or other property; and that such was the agreement of the parties, at the time the contract for the purchase was made? Can it be possible, that under such circumstances the complainant could have been allowed to recover a judgment for the purchase money? If he could, where would be the defendant's redress for a wrong so monstrous and palpable? If he could not defend himself at law, because he could not in the face of the deed prove any other than the payment of the monied consideration expressed, he would be equally defenceless in equity; because the rules of evidence in regard to explaining, or varying, or contradicting written evidence, are the same in both courts; and thus the court must unavoidably be the instrument in inflicting the grossest injustice.

If in the case now under examination, the consideration of the deed from the complainant to the defendant, instead of being, as is alleged, twenty-five thousand dollars of stock in the Okisko Company, had been the conveyance by the defendant to the complainant of real estate of the same value, and each deed had been upon a money consideration expressed, is it possible, that upon a bill filed by one of the grantors, claiming the enforcement of the vendor's lien, this court must have given him a decree for a sale of the property, upon proof that the monied consideration expressed, had not been paid? And that, the other vendor must in like manner proceed upon his equitable lien to recover his money, which in case of any serious deterioration of the property, from any cause, might be impossible.

The question in such a case, would not be, whether a deed shown to be fraudulent and void, by disproving the consideration expressed, could be set up by evidence of a different consideration ; but whether a party asking the assistance of the court to enforce the payment of the purchase money, had *in fact been paid.* And whether paid in money, or in something which he agreed to receive as money, cannot be material.

I am, therefore, of opinion, that the evidence is admissible.

It is said, however, that though the evidence may be admissible, there is no sufficient proof to establish either the agreement set up in the answer, or a valid subscription binding the complainant, the Elysville Manufacturing Company, to the stock of the defendant.

With regard to the agreement, that the complainant would convey to the defendant the property in the deed mentioned, in consideration of receiving twenty-five thousand dollars of the capital stock of the defendant, I am persuaded, that a reasonable doubt cannot be entertained.

There is, in the record, a mass of evidence upon the point, both oral and written, which, in my judgment, irresistibly conducts the mind to the conclusion; and many of the well authenticated and admitted acts, and declarations of the parties can be accounted for upon no other hypothesis. It would be tedious and useless, to recapitulate the evidence upon which this conviction rests ; and I content myself with saying, that after listening with much attention to the comments of counsel and carefully reading the proof, I am unable to see how it is possible to arrive at a different result.

The only remaining question relates to the validity of the subscription, by the complainant, to the capital stock of the defendant. The subscription, *in point of fact,* by the president of the former company, is not denied ; nor is it denied, that at or about the time the deed was delivered to the defendant, the attorney, in fact of the complainant, by whom the delivery was made, received from the defendant a certificate for the stock, and that this certificate has never been returned to the defendant since.

The validity of the subscription is, however, questioned upon two grounds; first, because the president of the Elysville Company, by whom it was made, was not authorized to make it. And, secondly, because the ten dollars on each share, required by the 8th section of the charter of the defendant, to be paid at the time of making the subscription, were not paid in money.

In urging the first objection, it is said, that a corporation aggregate must act collectively, and by vote, or resolution. But though this may be true, it is now well settled in this country, that the acts of a corporation evidenced by a vote, written or unwritten, are as completely binding upon it, and as full authority to its agents, as the most solemn acts done under the corporate seal; and, that promises and engagements may as well be implied from its acts, and the acts of its agents, as if it were an individual. *Angel on Corporations*, 60, 127, 128.

In the case of the *Union Bank* vs. *Ridgely*, 1 *H. & G.*, 426, the court say, "that the same presumptions arise from the acts of corporations, as from the acts of individuals; consequently that the corporate assent, and corporate acts, not reduced to writing, may be inferred from other facts and circumstances, without a violation of any known rule of evidence."

And again, in *Burgess* vs. *Pue*, 2 *Gill*, 254, the court say, "a vote or resolution appointing an agent, need not be entered on the minutes, but may be inferred from the permission or acceptance of his services." "And, that acts done by a corporation, which pre-suppose the existence of other acts, to make them legally operative, are presumptive proof of the latter."

Such being the law upon the subject, and it being quite competent to this court, without the production of an express authority from the Elysville corporation to its president to make the subscription in question, to infer it from other acts, I am clearly of opinion, that the facts and circumstances of this case are quite sufficient to warrant the inference—the fact of the receipt of the certificate by the agent of the complainant—

its retention to the present time, so far as the record informs us, and that the stock has been voted, on two occasions, by an officer or member of the corporation of the complainant, are acts which pre-suppose the existence of the other acts, to wit : The authority to the president to make the subscription.

The other ground upon which the validity of this subscription is assailed, is that the ten dollars required by the eighth section of the charter to be paid at the time of subscription, have not been paid.

It may be remarked, upon this objection, that it is taken by a party who holds a certificate for the stock subscribed by him, and has held it for upwards of two years.   That, in consequence of this subscription, and the conveyance of the property, made by such party, the other members of the corporation have advanced large sums of money upon their subscriptions, which sums have been expended upon the property now attempted to be affected by the vendor's lien ; and, that if the efforts of the vendors are successful, the moneys so expended may be entirely lost to the associates of the vendors.   The attempt, therefore, as it seems to me, is destitute of any support in equity. It appears to be quite apparent, that if these vendors had not subscribed for the stock, and executed the deed of the 20th of August, 1846, the other members of the corporation would not have advanced their money.   The subscription was not only made, and the deed executed, pursuant to the agreement of the parties, but there has been, so far as the record discloses, an entire acquiescence on the part of the vendor, from that time until this bill was filed, in September, 1848, and not only a passive acquiescence, but an active participation on the part of the vendor in the affairs of the corporation, by attending and voting at the corporate meetings.   There do not appear to be any grounds for doubting, that until this bill was filed, the defendant considered the complainant a stockholder in the corporation ; and, that the money of the other corporators was expended upon the faith of that conviction, and my impression is, that conviction on the part of the defendant, was the natural result of the conduct of the complainant.

The case relied upon by the complainant's counsel in 1 *Caine's Rep.*, 381, *The Union Turnpike Company* vs. *Jenkins*, is entirely unlike this case in some of its most essential features. In that case, which was an action of assumpsit brought by the company against the defendant, to recover certain payments called for pursuant to the act of incorporation, the court decided that the payment of ten dollars on each share, required to be paid at the time of subscribing, was essential to the consummation of the contract; and that without such payment the court was at a loss to see any consideration for the promise to pay the remaining instalments. The subscription and payment were both regarded as necessary to perfect the contract. That unless the concurrence of both could be shown, the defendant could not be regarded as entitled to the rights of a stockholder. And the Chief Justice remarked, that if the speculation had been an advantageous one, and before the first call of the president and directors the stock had risen considerably in value, they could have refused to consider the defendant as a stockholder, on account of his not having made the payment required by the act, at the time of subscribing. This want of mutuality, therefore, was the ground upon which the defendant was held not responsible for the payments called in. This constituted the want of consideration necessary to maintain the action.

But this case is not at all like that. Here, the Elysville Company have received a certificate for the stock subscribed by its president, and have executed a deed to the defendant, of property, as the equivalent for, and in payment of, the stock. The contract, therefore, is no longer executory, but is an executed contract on both sides ; and the attempt here is, not to resist the performance of an executory agreement, upon the ground that some act was not done, essential to give it legal validity ; but to cancel and abrogate a contract carried into full and complete execution by both parties. Suppose in the case referred to, the defendant had paid up the instalments as they were called in, and had received a certificate for the stock ; would it have been possible for him, or the company, thereafter to repu-

diate the subscription, upon the ground that he did not pay the ten dollars at the time of subscribing? It seems impossible to suppose that this could be done; and yet such is the effort here on the part of this complainant. After paying as agreed upon; receiving a certificate for the stock; attending and voting at corporate meetings; and acquiescing for two years, during which large sums of money are expended by the other subscribers, an effort is made to repudiate the whole proceeding and recover back the consideration paid. I think this cannot be done, and shall, therefore, dissolve the injunction; and the decision of this motion necessarily disposes of the petition* filed the 3d of March last.

---

*The petition referred to was filed by the complainants, stating that the property in dispute was lying idle and unused, and was going to decay, and praying that it might be sold, and the proceeds of sale deposited in court, to abide the issue of the cause.