THOMAS BURGESS, COLLECTOR OF PRIMARY SCHOOL DIS-
TRICT, NO. 30, OF HOWARD DISTRICT, *vs.* ARTHUR
PUE, JR.—*December* 1844.

In an action of *replevin*, brought by a taxable inhabitant against a collector
of the school tax, to recover property seized for non-payment of such tax,
due for 1843, having filed his affidavit on which he obtained the writ,
affirming that the property had been taken by such collector, he cannot
maintain that the school district is disorganized, and the power of the
taxables suspended by reason of informalities in the proceedings of such
district, for the year 1842.

Nor that the election for 1843 was void, because the minutes of the proceed-
ings of the taxables did not state every thing to have been done, which the
law requires to be done; as, that the election should be by ballot. It is not
necessary that the mode of election should appear on the minutes, nor that
they should show the clerk had bonded.

The taxables when assembled, may vote a tax, as well for the expenses for
the current year, as to pay arrearages due for essential expenses of the pre-
ceding year.

Notice of the time and place of meeting of the inhabitants, to authorise the
imposition of a school tax under the act of 1825, should be given.

In such an action, the collector need not offer proof of his qualification. He
is an officer *de facto*, and in the absence of proof, no presumption is to
be made against his qualification.

The act of 1825, does not forbid the appointment of one of the trustees to
be the clerk of the school district.

The legislature had the right to delegate, to those appointed to exercise them,
viz : the taxable inhabitants, the powers given by the act of 1825, ch.
The individuals to whom those powers were delegated, ought to conform
to the provisions of the law under which they act; but the minutes of their
proceedings need not show all the facts necessary to give them jurisdiction.
Governed by the nature of the trust conferred, and the great confidence
reposed, by the law, in the judgment of such inhabitants, the court will
presume any thing which the law requires to be done, to be rightly done,
until the contrary appears.

Upon a case stated, which does not authorise the court to give judgment for
either party, this court can give no judgment, but must reverse that of the
court below, and remand the cause.

In the case of corporations, the recording of an official bond is not essential
to its validity, unless it be so expressly declared.

A vote or resolution, appointing an agent for a corporation, need not be en-
tered on the minutes, but may be inferred from the fact of accepting his
services, or permitting him to act.

Persons acting publicly as officers of a corporation, are presumed to be rightfully in office.

An election by a corporation, contrary to its charter, is voidable; yet if an officer has come in under color of right, and not in open contempt of all rights whatever, he is an officer *de facto.*

APPEAL from *Howard District* Court.

This was an action of *replevin*, commenced by the appellee against the appellant, on the 4th September 1843, founded on the following warrant, viz:

"To *John L. Moore*, clerk of *Howard District* of *A. A.* co. *Howard District* of *Anne Arundel* county, to wit:

Whereas, on this 4th of September 1843, before me the subscriber, one of the justices of the peace of the State of *Maryland*, in and for the said district, *Arthur Pue, jr.*, of the said district, made oath, that two pied oxen belonging to him have been illegally and unjustly seized in execution for school taxes, for district No. 30, by the collector, *Thomas Burgess*, which affidavit is hereto annexed : Whereby it appears to me, that it is necessary for the purposes of justice, that a replevin should issue; you are hereby empowered and directed to issue a replevin for the following chattels taken as aforesaid, to wit, "two pied oxen," and this shall be your warrant for the same. Witness my hand and seal this 4th day of September, 1843.

JAMES A. FROST. (Seal.)"

"*Howard District* of *Anne Arundel* county, to wit: Be it remembered, that on this 4th day of September 1843, before me the subscriber, one of the justices of the peace of the State of *Maryland*, in and for the said district, personally appeared *Arthur Pue, jr.*, of the said district, and made oath on the Holy Evangely of Almighty God, that two pied oxen have been illegally and unjustly seized by the collector, *Thomas Burgess*, for the school taxes for primary school district No. 30, of said district.

Sworn before JAMES A. FROST. (Seal.)"

Replevin bond was filed and approved. The writ of *replevin* issued, and the oxen were replevied and delivered to the plaintiff below, who filed his declaration for the same.

The defendant pleaded

1. *Non cepit.*

2. An avowry, in which he alleged, that the said place where the taking of the goods and chattels, aforesaid, is supposed to be, is within the limits of primary school district No. 30, of *Howard District* of *Anne Arundel* county, and that at a meeting of the taxable inhabitants of said primary school district, duly convened and held in said district on the 29th day of July 1843, it was among other things voted, that a tax of sixteen cents on every hundred dollars worth of assessable property in said district be raised, to defray the expenses of the school in said district, and the said defendant was then and there duly elected and appointed collector of said district, and to collect the aforesaid tax; and the said defendant accepted said office, and duly qualified as such collector, as aforesaid; and received from the trustees of said primary school district, duly appointed and qualified as such, a rate bill made by the said trustees, and containing the names of the persons chargeable with the aforesaid tax, with the sums respectively payable by them agreeably to law, and a warrant in due form of law, requiring the said defendant, as collector as aforesaid, to collect the sums chargeable against, and payable by said persons respectively, according to law. And because the said plaintiff was chargeable with the sum of $37.49½, part of the tax aforesaid, so as aforesaid voted and assessed, and because the said plaintiff utterly refused to pay the aforesaid sum of money or any part thereof, unto the said defendant, as collector as aforesaid, within the time limited by law for that purpose, or at any time prior to the aforesaid taking, although payment thereof of the said plaintiff, was by the said defendant, as collector as aforesaid, in due form of law demanded, that is to say, on the day and year aforesaid, at the county aforesaid; the said defendant well avows the taking of the said goods and chattels in said place, where, &c., and justly, &c., for the said sum of $37.49½, so being in arrears and collectable by the said defendant, as collector as aforesaid, which to the distress of said defendant, as collector as aforesaid, was charged

and bound, and this he is ready to verify. Wherefore, he prays judgment and a return, &c.

The plaintiff joined issue on the 1st plea, and replied to the avowry.

1st. That the said defendant, at the said time when, &c., was not the collector of primary school district, No. 30, duly elected, qualified and authorised to collect the taxes imposed in said district, in manner and form as the said defendant hath above, in his said avowry in that behalf alleged; and this, &c.

2nd. That the meeting of the taxable inhabitants of said primary school district, held on the 29th July 1843, by which the tax mentioned in the said avowry is avowed to have been made, was not duly convened and held in said district, and was not authorised to impose and vote said tax; and this, &c.

3rd. That the taxable inhabitants of said primary school district, No. 30, were, on the 15th July 1843, notified to meet on the 29th July, (at the school house in said district,) of said year, for the purpose of electing officers, and voting a tax for the support of the school for the ensuing year, and the said taxable inhabitants, on the said 29th July, at the said school house, in said meeting, voted a tax to defray the necessary expenses of the district, during the past and for the current year, which tax is the same in the said avowry mentioned; and this, &c.

4th. That the tax voted by the said meeting of the taxable inhabitants of school district, No. 30, in said avowry mentioned, was not voted at an annual meeting of the taxables of said district, duly convened and held, and this the said plaintiff is ready to verify; wherefore he prays judgment, &c.

5th. That on the 29th July 1843, there was no legally organised school district meeting, authorised and empowered to vote a tax on the inhabitants of said district, and this the said plaintiff prays may be enquired of by the country, &c.

6th. That at a meeting of the taxables of the said supposed school district, No. 30, held on the 30th July 1842, a tax of eight cents in the hundred dollars of assessable property in

33    v.2

said district, was voted for the expenses of said school district for the ensuing year, and a rate bill or tax list made out and placed in the hands of the defendant, with a warrant thereto annexed, commanding him to collect of the said plaintiff the sum of $18.74¾, among others of the taxable inhabitants of said district, by virtue of which proceedings and warrant, the said defendant seized and took the property of the said plaintiff, in payment of the said sum of $18.74¾; whereupon the said plaintiff sued out of *Howard District* court of *Anne Arundel* county, a writ of replevin against the said defendant, on which writ such proceedings were afterwards had in said court, that a judgment thereon was given for the plaintiff, as will appear from the record of said court, and the said plaintiff in fact saith, that the tax imposed by said meeting of the taxable inhabitants of said supposed school district, No. 30, at the meeting of the 29th of July 1843, was voted to defray the expenses of the past and for the current year; and the said plaintiff further in fact saith, the said defendant hath appealed from the judgment of *Howard District* court, in the action between the said plaintiff and the said defendant, on the writ of replevin, sued out by the plaintiff as aforesaid, which appeal is still pending and undecided, and this the said defendant is ready to verify; wherefore he prays judgment, &c.

7th. That the sum voted as a tax, at the meeting of the taxables of the said supposed school district, No. 30, held on 29th July 1843, was not raised in due proportion on all the taxable inhabitants of said district, and this he is ready to verify; wherefore he prays judgment, &c.

It was then agreed, by the parties, that this cause be submitted to the court here, on the following statement of facts:

It is agreed and admitted, that a meeting purporting and claiming to be an annual meeting of the taxable inhabitants of primary school district, No. 30, in *Howard District*, held on the 29th July 1843, at the primary school house in said district, pursuant to notice, by *George L. Stockett*, (who assumed to act as, and during the then preceding year had publicly acted as the clerk of the district,) set up at the school house,

and other, the most public places in the district, for the space of time required by law, a tax of sixteen cents on every one hundred dollars of assessable property in the district, was imposed and laid to defray the necessary expenses of the district, during the past and for the current year; that *George L. Stockett, George Ellicott* and *Isaac P. Ijams*, were elected trustees of said district for the ensuing year, and the defendant was elected collector thereof, and the said collector gave bond with security, for the performance of his duties as collector, as appears from the copy of the minutes of the book of proceedings of said district hereto annexed, marked A, as a part of this statement, (which copy it is agreed, shall be taken and received as full proof of the entries therein, as if the original was before the court duly proved,) and which is in the following words, to wit:

"A copy of the proceedings of primary school, No. 30, of *Howard District* of *A. A.* county.

PRIMARY SCHOOL.—Notice is hereby given, that the annual meeting of the free white male citizens of the State of *Maryland*, above the age of twenty-one years, and actual residents of, and taxable in school district, No. 30, of *Howard District* of *A. A.* county, will be held at the school house in said district on Saturday, the 29th day of July next, at 10 o'clock, A. M., for the purpose of electing officers and voting a tax on the assessable property of the district, for the support of the school for the ensuing year.

July 15th, 1843.          GEO. L. STOCKETT, Clerk."

"29th July 1843. At a public meeting of the taxable inhabitants of primary school district, No. 30, in *Howard District* of *A. A.* county, convened according to public notice, given by handbills placed at the following places, to wit, one at *Lilly's* tavern, one at *Ilchester* mills, one at *Mrs. Williams'* tavern, one at school house, No. 30, and one published in the *Howard District Press*. The meeting was then organized by calling *George Ellicott* to the chair, and appointing *McLane Brown*, secretary. The trustees laid before the meeting a communication from the counsel engaged to defend the suits brought

against *Thomas Burgess*, collector; and after considering the same, the following resolutions were adopted :

1st. Resolved, that *Thomas Burgess*, collector, be instructed to suspend all further proceedings in the collection of the tax imposed by the resolutions of the meeting held on the 30th July 1842.

2nd. Resolved, that a tax of sixteen cents on the one hundred dollars of assessable property, in the district, be imposed on said property, to defray the necessary expenses of the district, during the past and for the current year.

3rd. Resolved, that every taxable inhabitant, who shall have paid the sum assessed to him by the resolution passed on 30th July 1842, shall be entitled to retain the sum so paid by him out of the tax, which he may be liable to pay under the above resolutions.

The above three resolutions were unanimously adopted, the people voting by ballot. On motion, *George L. Stockett* read the trustees' report. On motion of *Reuben P. Hammond*, the trustees' report was unanimously adopted. On motion of *McLane Brown*, *George L. Wight* and *Levy Chaney* were appointed to count the ballots, when it appeared there were thirteen votes in favor of the report and none against it. On motion, *Mr. Hammond*, *George L. Stockett*, *George Ellicott*, and *Isaac P. Ijams*, were put in nomination for trustees for the ensuing year. On motion of *Mr. Brown*, the meeting then proceeded to ballot. On motion, *Mr. Ijams*, *George L. Wight* and *Levy Chaney* were appointed to count the ballots, when it appeared thirteen ballots were deposited, and that there were thirteen votes for *George L. Stockett*, thirteen votes for *George Ellicott*, and thirteen votes for *Isaac P. Ijams*, one member of the meeting refusing to vote. *George Ellicott*, *George L. Stockett* and *Isaac P. Ijams*, were therefore declared duly elected trustees for the ensuing year. On motion of *Mr. Stockett*, the meeting proceeded to ballot for clerk, *McLane Brown* being in nomination. On motion of *Mr. J. P. Ijams*, *George L. Wight* and *Levy Chaney* were appointed to count the ballots, when it appeared *Mr. Brown* was unanimously elected.

On motion of *Mr. Stockett,* the meeting proceeded to ballot for collector, *Thomas Burgess* being in nomination; on motion of *J. P. Ijams, George L. Wight* and *Levy Chaney* were appointed to count the ballots, when it appeared that *Thomas Burgess* had thirteen votes, being the whole number of votes cast, and he was declared unanimously elected. On motion of *Mr. Ijams,* the minutes of the meeting was read by the secretary. On motion of *Mr. Stockett,* the meeting was then adjourned to the 29th July 1844, and the proceedings signed by the chairman and secretary.

(Signed,)    George Ellicott, *Chairman.*
McLane Brown, *Sec'y.*"

"Annual report of the trustees of primary school, No. 30, of *Howard District* of *A. A.* county.

The trustees of primary school, No. 30, report, that at the last annual meeting of the resident taxable inhabitants, held on the 30th July 1842, we were elected trustees for the ensuing year, and at the same time, a levy of eight cents on the one hundred dollars of taxable property in the school district, was voted for the support of the school; that it was estimated $160, but only $22 has been collected and received. We have received from the school commissioners of *Howard District* $90, and from the State fund $55.25, from the monthly payments of the children attending school $36— in all about $203.25. We have paid for teacher's salary $182.62, for books, stationary and stove, $43.21, but there is now due for stationary and teacher's salary about $65, which is estimated in the expenses for the ensuing year. Circumstances having occured, not necessary here to mention, makes it necessary that a levy of 16 cents on the $100 of taxable property in the school district, be made to meet the expenses of the school for the past and ensuing year, this we estimate to be about $560. We estimate the levy of 16 cents, will produce about $390; the monthly payments of the children about $25, and from the State fund and commissioners of the district about $145, which we think will be sufficient to defray the necessary expenses of the school for the ensuing

year, and meet its liabilities for the past year. All of which is respectfully submitted.

    (Signed,)  GEORGE ELLICOTT,
          GEO. L. STOCKETT,
          J. P. IJAMS,  Trustees."

"Copy of clerk's bond.

Know all men by these presents, that we, *McLane Brown* and *Edward Brown*, of *Howard District* of *A. A.* county, are held and firmly bound unto the State of *Maryland*, in the just and full sum of $300, current money, to be paid to the said State of *Maryland*, or its certain attorney, to which payment well and truly to be made, we bind ourselves and every of us, our heirs, executors and administrators, jointly, severally and firmly by these presents, sealed with our seals, and dated this 31st day of July, in the year 1843. Now whereas, the above bound *McLane Brown* has been duly appointed clerk of primary school district, No. 30, of *Howard District* of *Anne Arundel* county.

The condition of the above obligation is such, that if the said *McLane Brown* shall well and faithfully execute the office of clerk, as aforesaid, according to law, then this obligation to be void and of no effect, otherwise to remain in full force and virtue in law. (Signed,) McLANE BROWN, (Seal.)
            EDWARD BROWN. (Seal.)

Signed, sealed and delivered in presence of
  MARSHALL D. MAXWELL."

"A copy of tax list for 1843, at 16 cts. on the $100. *McLane Brown*, $2,146, $3.43½, and forty-two other taxables.

"Received 1st August 1843, of the trustees of primary school, No. 30, *Howard District*, a copy of the above tax list for collection, which is to be returned collected, within sixty days.
    (Signed,)  THOMAS BURGESS."

"A copy of collector's bond.

Know all men by these presents, that we, *Thomas Burgess* and *Washington Gaither*, of *Howard District* of *Anne Arundel* county, are held and firmly bound unto the State of *Maryland*, in the full and just sum of $384, current money, to be paid to

the said State, or its certain attorney or assigns, to which pay-
ment well and truly to be made, we bind ourselves and every
of us, our and every of our heirs, executors and administrators,
jointly and severally, and firmly by these presents, sealed with
our seals and dated this 1st day of August, in the year of our
Lord 1843: whereas, the above bound *Thomas Burgess* has
been duly appointed, collector of primary school district, No.
30, in *Howard District* of *Anne Arundel* county; now the
condition of the above bond is such, that if the said *Thomas
Burgess* shall well and faithfully execute the office of collector,
as aforesaid, according to law, this obligation to be void, other-
wise to be and remain in full force and virtue.

(Signed,)      Thomas Burgess,    (Seal.)

              Washington Gaither, (Seal.)

Signed, sealed and delivered in the presence of

      McLane Brown.

A true copy from the school book, McLane Brown, Clerk."

Which bond of said collector was accepted and approved
by the said trustees who had accepted their appointment, and
were acting as trustees as aforesaid, and that the said trustees
so acting as such, made out a rate bill or tax list, for raising
the aforesaid tax on all the assessable property in the district,
and in due proportion; but the said plaintiff alleges, that the
resolutions annexed thereto, qualify said rate bill and render
said proportion unequal, delivered the same with their warrant,
requiring him to collect the aforesaid sums from the persons
charged therewith, with the resolutions adopted at said meet-
ing, from No. 1 to No. 3 inclusive, annexed to said rate bill
and warrant.

It is further agreed, that the copy of the proceedings of the
said primary school meeting, and of the bond of the defendant,
as collector aforesaid, and rate bill and warrant aforesaid, at-
tached to and made a part of this statement, may be read by
the plaintiff, for the purpose of shewing, (if he can,) any
irregularity or defect in the proceedings of said meeting, or in
the appointment or qualifications of the said trustees or col-
lector, which will in law, negative the authority of said trustees

or collector to act as such, and the admissions herein previously made, are to be taken, subject to this limitation. It is further admitted, that in the year 1832, a primary school was organized in said district, and ever since has been kept up in fact; but the regularity and legality of such organization and continuance is denied by the plaintiff, and affirmed by the defendant. It is admitted, that the trustees and clerk elected on the 30th July 1842, at the meeting of the taxables of said school district (claiming and professing to be the annual meeting duly convened, but which claim is denied by the plaintiff,) of that year, were elected *viva voce*, and not by ballot, the plaintiff being present and voting, and no objection having been made to said proceeding, and that the said trustees and clerk continued to act as such until the 29th July 1843, and that no district meeting of the taxables of said district was formed or organised by the commissioners of primary schools, in the interval or up to the time of the commencement of this suit, and no trustees, clerk, or collector, were appointed by the commissioners of primary schools, for school district No. 30, since the said school first went into operation. It is further admitted and agreed, that the record of proceedings in the action of replevin between the present parties, tried and determined in this court at March term, 1843, and now depending in the Court of Appeals, shall be taken as part of this statement, and that any fact therein admitted, shall be admitted herein, and the plaintiff is allowed to rely on the papers in said cause, and the minutes of proceedings hereto annexed, marked B., as follows, to wit: the 9th annual meeting of primary school, in district No. 30, *A. A.* county. 29th July, 1839, minutes of the 9th annual meeting of the taxable inhabitants in district No. 30, *A. A.* county. On motion of *McLane Brown*, *George L. Stockett* was called to the chair; and on motion of *Anthony Smith*, *McLane Brown* appointed secretary *pro. tem.* On motion of *McLane Brown*, the report of the trustees was read by *George L. Stockett*, and on motion of *McLane Brown*, the report was unanimously adopted. On motion, the treasurer's report was read and adopted. On mo-

tion of *McLane Brown*, the meeting proceeded to the election
of officers for the ensuing year, when *Mr. Brown* nominated
*A. Smith, George L. Stockett* and *J. P. Ijams*, as trustees for
the ensuing year; the aforesaid gentlemen were unanimously
elected trustees for the ensuing year; and on motion, *McLane
Brown* was elected clerk for the ensuing year; and on motion
of *McLane Brown, Anthony Smith* was duly elected collector.
On motion of *Mr. Smith,* the meeting adjourned to the last
Saturday of July 1840.

The 10th annual meeting of P. S., in district No. 30, *A. A.*
county, 1st August 1840. Minutes and proceedings of the
10th annual meeting of the taxable inhabitants in district No.
30, *A. A.* county. On motion of *J. S. Williams, Dr. R. G. Stoc-
kett* was called to the chair, and *J. S. Williams* appointed secre-
tary. On motion, it was resolved, under the laws regulating
primary schools of *A. A.* county, this meeting deem it incom-
patible for the trustees of primary schools, to hold at the same
time the office of commissioner or inspector of primary schools.
On motion, it was resolved, that when the number of scholars
in this school district amount to thirty, that the trustees be re-
quested not to admit any scholars from any neighbouring dis-
trict. On motion, it was resolved, that nine cents on the $100
be levied on this district, for the ensuing year. On motion,
*Anthony Smith, J. P. Ijams,* and *George L. Stockett,* were
elected trustees, and *George L. Stockett* to act as secretary,
*pro. tem.* On motion, it was resolved, that the annual meeting
be held on the last Saturday in July, hereafter, at 10 o'clock,
A. M. On motion, the meeting adjourned, *sine die.*

GEO. L. STOCKETT, Clerk, *pro. tem.*"

"July 31st, 1841. The 11th annual meeting of taxable in-
habitants of primary school district, No. 30, *Howard District*
of *A. A.* county. On motion of *George L. Stockett, Thomas
Maccrea* was called to the chair, and *George L. Stockett* ap-
pointed as clerk. On motion, it was resolved, that a tax of
eight cents on the $100 be levied on the taxable property of —
district, for the ensuing year. On motion of *Thomas Maccrea,
George L. Stockett, J. P. Ijams* and *George L. Wight,* were

34      2v.

appointed trustees for the ensuing year. On motion of *George L. Wight*, it was resolved, that the report of the trustees be adopted. On motion of *J. P. Ijams*, it was resolved, that this meeting do adjourn to the last Saturday of July 1842, at 10 o'clock, A. M.

July 30th, 1842. The 12th annual meeting of the taxable inhabitants of primary school district, No. 30, *Howard District* of *A. A.* county convened, and on motion, *George Ellicott* was called to the chair, and *McLane Brown* appointed secretary. On motion, the secretary read the trustees annual report; *Mr. Ijams* moved the adoption of said report, determined in the affirmative; *McLane Brown* moved a levy of eight cents in the $100; *C. S. W. Dorsey* moved, as a substitute, four cents, determined in the negative. The vote was then taken on *McLane Brown's* motion, and determined in the affirmative. *Mr. Wight* nominated *George L. Stockett, J. P. Ijams* and *George Ellicott*, as trustees for the ensuing year; *Henry H. Pue* nominated *Levi Chaney, Anthony Smith* and *William Smith*; the question was then taken on the nomination of *George L. Stockett*, unanimously elected; *J. P. Ijams* and *George Ellicott*, unanimously elected; *Mr. Ijams* nominated *George L. Stockett* as clerk, elected unanimously. On motion of *C. S. W. Dorsey*, resolved, that the trustees report to the next annual meeting the number and names of the children attending school, and who pay capitation tax, and the time of their attendance. On motion of *A. Smith*, the meeting adjourned, to meet on the last Saturday of July 1843, at 10 o'clock, A. M.

(Signed,) GEO. ELLICOTT, *Chairman.*
McLANE BROWN, *Sec'y.*"

And all other proceedings in the minutes of the proceedings of said school district, to be read from the minute book, for the purpose of showing a defect or want of legal authority in the meeting of taxables of 29th July 1843, to impose said tax, and in the defendant as collector, or for any other cause; the defendant denying, however, the right of the plaintiff to rely on any part of said proceedings of any meeting anterior to the 29th July 1843, for any such purpose. It is further admitted,

that the plaintiff is, and on the 29th day of July 1843, was, a taxable inhabitant of said primary school district, and charged as such with the tax imposed, as aforesaid; that payment thereof being refused, the said defendant seized the property in the proceedings mentioned, these being the property of the plaintiff, and within the aforesaid district, and held the same for payment of said tax, but no objection, whatever, is to be taken to the regularity of the proceedings of the defendant, provided he was legally and duly authorised to demand payment, as aforesaid. It is further admitted and agreed, that the minutes of proceedings of school district No. 30, marked B. shall be received as legal evidence of the facts therein stated, as if the original book was duly proved; upon the foregoing statement of facts and such inferences thereupon as a jury might fairly draw, it is submitted, whether said defendant had lawful authority as collector, as aforesaid, to take the property of the plaintiff, aforesaid; the case is submitted to the court, with liberty to either party to appeal.

RICH'D. I. BOWIE, for plaintiff.

THOS. S. ALEXANDER, for defendant.

The plaintiff then insisted, that the act, entitled, an act to provide for the public instruction of youth in primary schools throughout the State, and the several supplements thereto, are unconstitutional and void.

2nd. That the tax laid at the meeting of the taxables of primary school district, No. 30, of *Howard District*, held on the 29th July 1843, was illegal and void; because the trustees, clerk, and other officers, elected at the preceding annual meeting of the 30th July 1842, were not elected by ballot, but *viva voce*, and the clerk did not bond, whereby the said district meeting was disorganised, and the powers of the taxables suspended; and the annual meeting of the 29th July 1843, was called without due authority of law, the commissioners of primary schools being the proper persons to re-organise said district meetings.

3rd. That the notice declared the object of the meeting to be "for the purpose of electing officers and voting a tax," &c.

"for the support of the school *for the ensuing year;*" the tax laid was to defray the expenses of the district during the past, and for the current year.

4th. That the tax is retrospective, and not prospective, is not within the purview of the acts, but for purposes not prescribed by them.

5th. That the tax was not laid at the annual meeting of the taxables of the district.

6th. That two taxes have been laid in the same year for the same purpose.

7th. That the sum voted as a tax, was not raised in due proportion on all the taxable property in said district.

8th. That the property of the plaintiff has been before seized and taken for a part of the sum now demanded of him as a tax, and for which his property is now seized, and a suit is now pending in the Court of Appeals, involving the validity of the tax first laid.

9th. That the said taking was illegal and wrongful, because the said defendant had not duly qualified as collector of said tax, according to law.

10th. That the person assuming to act as clerk, was ineligible, having previously been elected trustee, and acted as such; he could not act in both capacities, and the proceedings shew he acted as trustee, and did not qualify as clerk.

The county court rendered judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued, on notes, before ARCHER, C. J., CHAMBERS, SPENCE and MAGRUDER, J.

By T. S. ALEXANDER, for the appellant.

The constitutional objections to the primary school system were opened and fully discussed on the former appeal, and are now under consideration. On the present occasion, the appellant's counsel will confine himself to the discussion of the questions of irregularity, which are peculiar to this case.

2. It is alleged, that the proceedings of the meeting held in July 1843, were void, because of the irregular proceedings of the meeting in July 1842, which it is said, disorganized the district, and suspended the powers of the taxables.

The specific irregularities alleged, are, that the trustees and clerk were elected *viva voce*, and not by ballot; and that the clerk did not give bond, as required by law. I have already, in the former case, discussed the effect of the irregularity in the manner of conducting the elections of 1842, and shown, as I trust, that it is cured by the act of 1828, chap. 169, sec. 5.

The only effect of the irregularity, if not cured, would be to avoid all the acts of the meeting of 1842. It cannot disorganize the district, or dissolve the corporation. In 9 *Wendell*, 35, *Reynolds vs. Moore*, and in 7 *Wendell*, 341, *Ring vs. Grant*, it has been decided, that in an action like the present, the plaintiff cannot show an irregularity or defect in the original organization of the district. If a defect in the original organization, which shows that the district was never duly organised, cannot be relied on, for the purpose of avoiding subsequent proceedings of the district, you cannot, on any principle, admit that proceedings, in themselves regular, of a district regularly organized, shall be avoided by proof of an intermediate irregularity. The act of 1825, chap. 162, sec. 9, expressly provides, that the clerk, trustees, and collector, once duly appointed, shall continue in office until their successors shall have been elected. An irregularity or defect in the mode of conducting an election, may vitiate the whole proceeding. It cannot disorganize the district, since provision is made to supply the defect created by a failure to elect, by an election, which, by reason of its irregularity, is to be treated as no election.

The taxables of the district, having the power of assessing taxes, and electing officers to manage their local affairs, constitute for those purposes a corporation; a corporation, not private but public, and clothed with political powers of great moment. Now, it is not true, that a political corporation, entrusted with important political functions, can be dissolved by

an irregularity in its proceedings, or in the succession of its officers or members. As a general rule, the acts of a person claiming to be invested with a particular office, and exercising publicly, and with general assent or acquiescence, the powers annexed to that office, must be respected. The remedy against usurpation, is to be found in the exercise of the power of *amotion*. You cannot avoid the act of the intruder; much less can you affirm, that an acquiescence by a corporation, in an intrusion, shall work a dissolution of the body. The commissioners of *Anne Arundel* county constitute a corporation. The law provides for a continued succession of its members, and I grant, for the purpose of the argument, that an election irregularly conducted, would not clothe the persons elected with the legal character of corporators. Yet, if the persons claiming to be the commissioners under such irregular election, were permitted to assume the office of commissioners; to possess themselves of the records of the corporation; to adjust the county expenses and impose a tax, and to appoint a collector and other local officers, could it be safely affirmed, that those proceedings were simply void, that the collector could not enforce the collection of the tax? that the killing of a constable thus appointed, whilst in discharge of the duty incident to his office, would not be murder? Will it be argued, that an irregularity in conducting the elections of commissioners in the year 1842, dissolved the corporation, and that the persons now acting as commissioners, in virtue of an election in 1843, are exercising the functions of an office which has no existence? If none of those positions can be maintained, it will be still more difficult to prove that a corporation, aggregate of an indefinite number, exercising in general meetings its most important functions, can be dissolved by a failure to elect, or mere irregularity in electing an executive officer. The consequence of maintaining the judgment of the county court, in this case, will be, that every one who is not inclined to pay his State or county taxes, will attain his object, by examining into the proceedings of the commissioners for some five years past. None of them, it is apprehended, will endure a severe scrutiny. It

is impossible to adopt any legal principle in support of the proceedings of the county commissioners, which will not apply with equal force, when invoked to the aid of the proceedings of the taxables and their trustees. And, indeed, their case is placed beyond the reach of cavil by the act of 1828, chap. 169, sec. 5, which expressly commends the primary school system to the protection of our courts of judicature, and declares, that no proceedings of the taxables or of the trustees, shall be set aside, or adjudged to be void for defect of form, or any irregularity therein, so as the requisitions of the acts are substantially complied with. The informal or irregular proceeding is to be sustained; and yet it is to be argued, that such informality or irregularity shall work a dissolution!

This act avoids all consequences of an irregular or informal proceeding, and therefore would repeal any inconsistent provision, which existed in the previous act of 1825, chap. 162. But in fact no inconsistency is to be discovered. Section eight of this last act, provides for the original organization of the district, and for the failure to organize after meeting, by an adjournment without day, or from any other cause. It cannot apply as a perpetual provision. After the first, or other meeting, has appointed a day for holding future annual meetings, there can be no adjournment without day, in the sense of the section. After one election, duly conducted, the offices will remain filled; and provision is made for other meetings, at which the omissions of the annual meetings may be supplied. If in all these important particulars, the law has so anxiously guarded against the consequences of irregularity, it is reasonable to infer, that informalities of less importance were not designed to accomplish a disorganization.

Nor is it unworthy of notice, that the effect of the irregularity is expressly submitted by the law to the judgment of the commissioners, and they are the exclusive judges of every question arising under the provisions of that section. If in their opinion, the district has from any cause been dissolved, they are to convene another. Can any court of justice or other

jurisdiction, in opposition to their judgment, determine that the first meeting was not dissolved, and sustain the proceedings of, and officers appointed by the first meeting, against the proceedings of, and officers appointed by the second meeting? If the commissioners should determine that the meeting was not dissolved, and refuse to convene another, could a court of justice reverse that judgment, and annul the proceedings of the first meeting? And what would be the consequences of such judgment of reversal? The district would be deprived of its school, and of its capacity to organize another, since the initiatory proceeding must be taken by the commissioners. We are brought, then, to this alternative: the section commented on must refer to an original meeting exclusively; or the question of dissolution, by the irregularity of a subsequent meeting, must be referred to the jurisdiction of the commissioners? Either alternative may be adopted by our adversaries, since it is to be inferred from the record, that the commissioners treat this as a regularly organised district.

The failure of the clerk, appointed in 1842, to give bond, could not work a dissolution, The giving of bond is essential to his due qualification. But a vacancy in the office of clerk, does not disorganize a district. Neither is such effect produced by a failure, on the part of the taxables, to elect a clerk by ballot. Provision is made by the law for the continuance in office, of the officer once inducted, until the regular appointment of his successor. We have shown the case of a clerk, duly elected and inducted, and entitled, because of the irregularity in a recent election, to hold over, and yet yielding his office to another, who claims under such recent election, which by reason of such irregularity·may be avoided. All the cases shew, that the acts of such usurping clerk, exercising the functions of clerk with the assent of the person lawfully invested with that office, and with public approbation, must be respected as if he had been legally inducted into office. 9 *Wendell*, 17, *McCoy vs. Curtier*. 7 *Wendell*, 341, *Ring vs. Grant*. 5 *Wendell*, 231, *Wilcox vs. Smith*.

The record admits, that the persons giving notice of the meeting of 1843, was elected (though the argument concedes irregularly,) clerk by the meeting of 1842; that he acted as clerk, from his election up to the time of meeting in 1843, without objection to his authority as such. Upon those cases and those admissions, I insist, that the notice in pursuance of which the meeting of 1843 was convened, is to be treated as given by the duly qualified clerk. I deny next the necessity for any notice of an annual meeting. The time of holding the annual meeting is fixed by the taxables, and all persons are bound to take notice of that day. The law requiring the clerk to give notice of such meeting, is directory merely. I think this may safely be inferred from section 10, and proviso to section 8 of the act of 1825, chap. 162. But this point was discussed in the former case, and is therefore to be rested on that discussion.

3. Assuming then that the district remained organized, and that the clerk elected in 1842, notwithstanding the irregularities existing in his election and qualification, was right in giving notice of the meeting of 1843, it is next to be shewn, that the form of the notice was sufficient for its purpose. One would suppose, that if defect in form could be tolerated in any proceeding whatever, it ought to be in the form of notice. No form is prescribed by the law. The act of 1825, chap. 162, sec. 10, simply requires that notice shall be given of the time and place of meeting. A designation of time and place is essential to the notice. Every thing else is surplussage. Does a notice then, that the meeting will be held for the purpose of voting a tax "for the support of the school for the ensuing year," or for any other specific purpose, restrain the meeting from transacting any business, which might have been transacted at a meeting convened after a more general notice? By no means. It might possibly be argued, that where a special meeting is called by the trustees, for a particular purpose, it should transact no other business than such as occasioned its call. But an annual meeting does not derive its authority to convene, from the order of the trustees or notice of the clerk.

Provision is made for the annual meetings by the law, which also enumerates the powers which such meetings may exercise. It may safely be affirmed, that the authority of an annual meeting to entertain and vote on any particular subject, is not to be restrained by the notice of the clerk. Else may the clerk defeat any purpose of the law. He might omit to state in his notice that officers were to be elected; and then it might be argued, that the corporation would be dissolved. He might omit all notice of the tax proposed to be assessed, and then no tax could be laid.

4. The tax, it is said, is retrospective in its objects, and not prospective; is not with the provision of the acts, but for purposes not prescribed by them. The specific objection, as is more specially stated in the third point, is, that the tax was imposed "to defray the necessary expenses of the district during the past and for the present year." What items are included under the head of "necessary expenses," do not appear, and consequently it cannot appear that the taxables have provided for any expenditure which it is not right to provide for. We are to assume then, that they are proper in their character, and the only question can be, whether the taxables can raise by taxation, a fund for payment of liabilities which they have previously incurred? In discussing this question it is to be assumed, that the law designed to confer on the taxables the authority to raise the sums, necessary to defray the expenses which they might incur in the exercise of their powers. And that they may, occasionally experience the very casualties which sometimes intervene to embarrass other public bodies and individuals. They may vote a tax of $500 to build a school house, which may in fact cost them $1,000. Would you debar them of the power of providing for payment of the additional expense? Their proceedings in assessing a tax may be void, and may not be so adjudged until after the expenses which it was designed to meet have been incurred. Would you say that those expenses should remain a charge and incumbrance on the district, until a special act of the legislature should enable them to provide for its discharge? A school

house may be erected at a necessary cost of $2,000, which the convenience of the district would require to have discharged by instalments. Would you subject the taxables to the charge for the entire amount in one year? Why would you deprive the taxables of this power of providing for payment of past expenses? No reason can be given for subjecting the taxables to this restraint, other than that as the assessable property in the district is continually changing hands, a tax to be imposed at this present time, would reach persons who were not subject to taxation during the past year, and would not reach many who will be subject to taxation during the succeeding year. This was the argument used in the court below. It assumes, that the persons owning property at the time a debt is incurred, must defray their aliquot proportion of that debt. But the act of 1825, chap. 162, sec. 12, requires the tax to be imposed on all the assessable property in the district, agreeably to the assessment of the last preceding tax. Upon the hypothesis suggested, the county tax may have been laid in January, the district tax may be voted in December, to defray the expenses of the succeeding year. All this the argument assumes to be admissible. Is there any greater injustice to result from permitting the meeting in December, to assess a tax for the then preceding year? There is nothing in the act, (vide section 8,) or in the act of 1828, chap. 169, sec. 3, which requires the taxation to be prospective. The language of those acts is just as broad as is to be found in the act of 1794, chap. 5, sec. 1, which requires the justices of the levy courts to meet annually, "to adjust the ordinary and necessary expenses of their several counties." Under this law, some of the levy courts adjust their expenses already incurred. Others provide only for future expenses, whilst others again provide for expenditures of particular classes already incurred, and as to others by way of anticipation. Will you deny to a levy court the power of providing a fund, to defray an expense which is about to be incurred? or to provide for payment of a debt already contracted? May not a recovery be had against a levy court for a debt contracted by its authority? And

would not a court compel the levy court to make a levy, for the purpose of discharging the judgment? The like law holds with regard to debts contracted by school trustees, and recoveries had against them. To say that the property in the district may have changed hands since the debt was incurred, begs the question. The alienation was made *cum onere*. The practical inconvenience of assessing, or attempting to assess a debt in due proportions on the persons taxable, at the moment the debt was contracted, would be extreme. The debts increase day by day. The alienations are daily made. But the spirit of our institutions require that the tax-gatherer should be seen once only in the year. The 13th section of the Declaration of Rights expressly declares, that every "person in the State ought to contribute his proportion of public taxes for the support of government, according to his actual worth." Here the charge is literally on the persons. But no one has yet ventured to deny the right of the legislature, to provide for future exigencies, or to supply the deficiencies created by the omissions of past legislatures. Can we charge the next generation with the debt we have created for works of internal improvements?

5. That the tax was not laid at an annual meeting. The answers to this objection are:  1. There is nothing in the law which requires the tax to be imposed at an annual meeting. 2. The notice states that an "annual meeting" will be held, and it is agreed, that the meeting purported and claimed to be an annual meeting. From these and the other facts admitted, it is fairly to be inferred, that the meeting was an annual meeting.

6. That two taxes have been laid in the same year for the same purpose. This is not true in point of fact. One tax was laid at the 12th annual meeting, held on the 30th July, (being the last Saturday,) 1842, the other at the 13th annual meeting, held on the 29th July, (being the last Saturday,) 1843. The first tax was voted to defray the liabilities then incurred and contemplated. The decision of the *Howard District* court was adverse to the right of the trustees to collect

that tax. In deference to the judgment of the court, the taxables suspended the collection of the tax, and assessed another tax, out of which they proposed to discharge the liabilities which were intended to be met by the first tax. There are not two taxes imposed for the same purpose. The last vote annuls the former vote, and all that can be collected is the last tax assessed.

7. That the tax last voted, was not raised in due proportion on all the taxable property in the district. The tax list made out is regular on its face, and there is nothing to show that it is not correct in every particular. The only pretext for this objection is, that by the third resolution, "every taxable who shall have paid the sum assessed to him by the resolution, passed on the 30th July 1842, shall be entitled to retain the sum, so paid by him out of the tax, which he may be liable to pay under the preceding resolutions." So far from inducing inequality, its adoption was essential to produce equality in contribution by the taxables. If partial collections of the tax of 1842 had been made, it would have been unjust to exact from those who made the payments, the entire amount of the taxes assessed by the resolutions of 1843. The further collections of the tax of 1842 being suspended, and the tax of 1843 being thereby necessarily increased, nothing was more just or equal than that the monies paid on account of the tax of 1842, should be refunded, or the taxable permitted to retain the amount out of the taxes chargeable to him in 1843.

8. That the property of the appellee has been taken in execution, for a part of the sum now demanded. This is untrue in point of fact. The property was taken by the collector of 1842; but was replevied by the appellee, and the judgment in that action was in his favor. The appeal now pending, does not affect in any manner that judgment or its consequences. If it should be affirmed, then there would be no ground for the objection; if it should be reversed, the appellee would be entitled to discount the amount assessed to him in 1842, from the sum claimed from him under the proceedings of 1843.

9. That the collector has not duly qualified according to

law. This objection does not deny the due election of the collector; and indeed, this fact could not be denied, since his election is expressly affirmed in the record of the proceedings of the meeting. His qualification is alone at issue. His bond (the giving of which constitutes his qualification,) is set out in the record, and it is admitted, that it was accepted and approved by the trustees. It is impossible for me to discover any ground for this objection.

In the argument of the former case, I insisted, that the proceeding adopted in the case assumed, that the defendant was legally appointed and qualified as collector. I rely on that argument in opposition to this objection now taken.

10. That the person assuming to act as clerk was ineligible, having been previously elected trustee, and acted as such. That he could not act in both capacities, and the proceedings shew, that he acted as trustee and not as clerk. This objection is but a variation of the third objection: "The clerk of 1842 was also elected a trustee. He could not act in both capacities. He acted as trustee, and therefore was not clerk." That he did act as clerk, is clear from the notice under which the meeting of 1843 was held. And it is distinctly admitted, that he continued to act as clerk down to the meeting of 1843. He acted likewise as trustee; but this did not vitiate his acts as clerk. There is no incompatibility between the offices of clerk and trustee. 16 *Johns.* 135; and if there was, he was clerk *de facto*, and I have already shown, that as clerk *de facto*, his notice was to be respected.

Having thus answered all the objections taken on the record, to the authority of the appellant, to enforce payment of the tax laid in 1843, I presume to ask a reversal of the judgment of the court below.

By R. I. Bowie, for the appellee.

The record in this case, shows an action of replevin, brought by the appellee against the appellant, for certain oxen seized, taken and detained by the latter, under the circumstances set forth in the case stated, as appears in the record.

The facts set forth in the case stated, on behalf of the appellant, are designed to show, that he acted by virtue of and in pursuance to the act of 1825, ch. 162, entitled, an act to provide for the public instruction of youth in primary schools, &c., and the several supplements thereto; and those introduced on the part of the appellee, to show that the seizure, caption and detention of the cattle, were not authorised by those acts, or any of them, for the reasons specifically assigned (as appears from the record,) in the court below; and the appellee further insisted, that if the caption and detention were in pursuance of said acts, or any of them, the appellee should recover, nevertheless, because those acts were unconstitutional and void.

The appellee's objections may then be reduced to two heads, as follows:

1. That the seizure, caption and detention of the appellee's property, were not authorised by the acts of 1825, chap. 162, and the several supplements thereto.

2. That if authorised by said acts, the appellee should recover, because those acts are unconstitutional and void.

Under the first point, assuming that the powers granted by the acts alone mentioned, to the inhabitants of the primary school districts, are "specially delegated powers," that the jurisdiction created by those acts, is a "special limited jurisdiction." The appellee insists, that the proceedings of the taxable inhabitants of the primary school districts, must be in strict conformity with the provisions of the laws authorizing them, and should show upon their face, the facts which are necessary to give them jurisdiction.

For the 1st branch of this postulate, vide *the State use of the Levy Court, vs. Merryman,* 7 *H. & J.* 91. 1 *H. & J.* 36. *Quyn, vs. the State use of Pue,* 1 *H. & J.* 359. *Ellicott, vs. the Levy Court. Kerr and al, vs. the State,* 3 *H. & J.* 560. 1 *Pick.* 109. *Metcalf's Dig.* 361, 362.

For the 2nd. Vide, *Wickes, vs. Caulk,* 5 *Harr. & John.* 42, 43, 45. *Shivers, vs. Wilson,* 5 *Harr. & John.* 130. 1 *Salkeld,* 475. *Cowp.* 26, 29. 4 *Bac. Abrid.* 656.

The act of 1825, chap. 162, sec. 8 and 10, requires notice to be given of the annual meetings.

Sec. 8, prescribes and limits the the power to tax, "to purchase a site for the school house, and to build, keep in repair, and furnish such school house with necessary fuel, books, stationary and appendages."

The act of 1828, chap. 169, sec. 3, authorises a tax on the assessable property in said district, for the payment of the salary of a teacher in said district.

The objects of taxation being thus limited, and notice required of the annual meeting for these purposes, it is clear, the proceedings of the meeting must be confined to, or conform with the terms of the notice, otherwise the notice would be nugatory.

On the 15th July 1843, as appears from paper A, in the record, the taxable inhabitants of primary school district, No. 30, were notified to meet on the 29th of July 1843, for the purpose of "electing officers, and voting a tax, &c., for the support of the school for the ensuing year."

Under which notice, they proceeded to lay a tax, to defray the necessary expenses of the district, during the past and for the current year.

The tax voted, therefore, is not only a tax not warranted by the primary school laws, because not within the terms of those laws, but is a tax levied without notice, and contrary to notice.

Again, the whole tenor of those acts shows, that the taxes imposed should be annual and prospective, thereby protecting the people from the burden of accumulated and improvident expenses; in this case, in disregard of these plain and salutary provisions of the laws, the tax is biennial and retrospective. The resolutions attached to the tax list in paper A, show, that the retrospective tax was designed to operate only on the appellee, and those who like him, had refused to pay the tax imposed in 1842, the regularity and constitutionality of which, as regards the appellee, was then "*sub judice*" in this court. This was directly opposed to the 12th section of the act of 1825, chap. 162, which provides, that if the sum payable by

any person named in such tax list, shall not be paid or collected within the time limited, "it shall be lawful to renew such warrant," not to double the tax.

The legality of the tax in 1842, being then pending, by appeal, in this court, if the same should be pronounced legal, the appellee must be twice mulcted for one year's tax; or if the same should be declared illegal, the appellee must pay the same, notwithstanding the court's decision against it.

It is further insisted by the appellee, that the election of officers, held in 1842, being made *viva voce*, and not by ballot, as required by the act of 1825, chap. 162, the primary school district, No. 30, was disorganised, and those officers illegally elected, could do no act for the continuation of the corporation, but the duty of re-organization devolved upon the commissioners of primary schools, as prescribed by said act in such cases, who did not, as is admitted by the appellant, form or organize any district meeting of the taxables of said district subsequently.

2nd. The appellee should recover, because the acts of 1825, chap. 162, and its supplements, are unconstitutional and void.

The original act, sec. 29, 30, provides, that if the majority of the voters of any county should be in favor of the establishment of primary schools, as therein provided for, then and in that case, the said act should be valid for such county or counties, otherwise of no effect whatever; and if a majority of the voters of any county in this State should be against the establishment of primary schools, then and in that case the said act should be void.

This reference to the people of the counties, for the obligation or sanction of a law, is no where warranted by the constitution. It sprung either from a desire to avoid the responsibility of legislation, or a mistaken application of that clause of the constitution, which requires an amendment of the constitution to be passed by two successive legislatures. Whatever the source, the error is gross and pernicious. The counties have no separate political existence or character, &c.

36    2v.

They are not recognised by the constitution, except as municipalities; they may be created or changed by the will of the legislature.  A law depending on the assent or dissent of a county, is not more valid than if it depended on the assent or dissent of any number of individuals, in any other geographical limits, because the people of the county have no constitutional right of legislating for themselves.

The legislative power of this State is vested in a General Assembly, consisting of Senate and House of Delegates, from the counties and cities of the State.  The citizens of *Anne Arundel* county, or *Howard District*, are entitled by the constitution to the benefit of their collective wisdom, without whose consent, it expressly declares no taxes shall be imposed. *Vide* twelfth section *Bill of Rights.*

By these laws, the sovereign power of taxation is delegated to an indefinite number of persons; the majority of those present may vote a tax *"ad libitum,"* for certain specific purposes. The representative form of government is here utterly annulled. The law of Parliament, which governs all deliberative assemblies, and is one of the chief safe guards of freedom, is set at naught: the relation of representative and constituents (with the accountability of the former,) destroyed, and the minority left to the mercy of the majority of a mass meeting; in other words, of a mob.  The bill of rights and constitution, contemplate and constitute a representative form of government; all the powers of which, are to be exercised by trustees or agents of the public, to which they are accountable.  Fourth and fifth sections *Bill of Rights and Constitution of Maryland.*

"The bill of rights and constitution is a compact, made by the people themselves.  In this compact, they have distributed the powers of government, and deposited the legislative, judicial and executive in separate and distinct hands, subject to such limitations and restrictions as they thought proper to prescribe."

"The legislature is not omnipotent."

"The power of determining the validity of the acts of the legislature, cannot reside with the legislature.  It cannot be

exercised by the people, because they cannot interfere by their own compact, unless by elections." *Whittington vs. Polk*, 1 *H. & J.* 242.

"If they cannot interfere with the judicial power, because by their own compact they have precluded themselves, the same compact inhibits the exercise of legislative powers."

"The constitution portions out supreme power, and assigns it to different departments, prescribing to each the authority it may exercise." *Crane vs. McGinnis*, 1 *G. & J.* 472.

"The power of making war, levying taxes, or of regulating commerce, are great, substantial, independent powers of sovereignty, which cannot be implied as incidental to other powers, or used as a means of executing them." *McCulloh vs. The State*, 4 *S. C. Con. Rep.* 476.

"The only security against the abuse of power of taxation, is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents." *Ibid* 486.

Such was the security designed by the constitution of *Maryland*, yet if taxes may be imposed in detached districts, by an inconsiderable and inconsiderate mass, where is the protection to the unfortunate private citizen who may be exposed to their power? The constituent may groan, but the legislature will not hear his cries, or participate in his burdens. The State of *Maryland* is not an association of counties, its entire territory and its whole people, constitute an integral government.

The united wisdom of the General Assembly is the constitutional guaranty of every citizen for the protection of his life, liberty and property.

It is insisted, the General Assembly cannot delegate the power of taxation to the people in mass, without the forms of a municipality or corporation. If so, the nature of the government might and would thereby be radically changed.

Representation or legislation by agents or trustees becomes a nullity; the freedom and frequency of elections is rendered abortive; and every republican principle is merged in a pure democracy.

The act of 1825, ch. 168, if originally binding, was a compact between the legislature and the counties accepting it, investing the taxable inhabitants of those counties with certain valuable franchises and privileges.    Sections 8, 15, 23.

It secured to them, upon complying with the provisions of the law, certain funds, to be applied to the payment of the salaries of teachers. Sec. 15.   1828, ch. 55, sec. 3, intended as a bounty for the promotion of education.

The law which was accepted by the taxable inhabitants of the counties as an act of grace and favor under these inducements, cannot constitutionally be altered by the act of 1828, ch. 169, and converted into a law for raising revenue for the purposes of education. *Dart. Col. vs. Woodward,* 4 *S. C. Con. Rep.* 579, 581.

The act of 1825, ch. 162, was addressed to and accepted by the taxable inhabitants, and vested its privileges in them ; men, women, citizens or aliens.

The act of 1828, ch. 169, transfers all the powers given to the taxable inhabitants to the free white male citizens.

Thus limiting privileges which had previously been granted to a large class for a valuable consideration to a comparatively small portion of the community.

The appellee further insists, that if the legislature can delegate the power of taxation and legislation, they must be restored to the people at large, from whom they were derived, that is to say, to every person authorised and qualified to vote under the constitution of *Maryland;* that the primary school law and its supplements, in this respect are unconstitutional, because they deprive the people at large of the school districts, of any voice in the election and control of the schools, and vest the power solely in the taxable inhabitants, or "free white male citizens, residents of and taxable in said districts respectively."

Contravening and annulling in the judgment of the appellee, the act of 1809, which secures the right of suffrage to every "free white male citizen above twenty-one years of age," and having resided "twelve months in the State, and six months in the county."

By the operation of these laws, the right of suffrage and legislation on the most valuable and momentous subject, the instruction of our own offspring, is taken away from the legislature, which represents and sympathises with every citizen, and is responsible for the faithful discharge of its duty to its constituency, and placed in the hands of a privileged and irresponsible majority, to be used without check or control.

MAGRUDER, J., delivered the opinion of this court.

An attempt to collect, by a seizure and sale of his property, the taxes imposed upon the defendant, in and by the taxable inhabitants of school district, No. 30, in *Howard* district, gave rise to this suit.

This tax, as it appears by the case stated, was imposed at a meeting which took place on the 29th July 1843, and was a tax of sixteen cents on every hundred dollars of taxable property within the district, in order to defray the necessary expenses of the district "during the past, and for the current year." If the meeting and the proceedings, which took place on that day, were authorised by law, then the defendant in error cannot sustain the action of *replevin*, which was brought by him, and the proceedings in which are now before us.

It is designed to notice the points which were raised in the court below, and in the order in which they were introduced into that court.

The first objection to this law, that it is unconstitutional, has been already over-ruled by this court, in the case between these same parties, decided at June term 1844.

One ground, on which the defendant in error insisted, that the tax could not legitimately be demanded, was, that the trustees, clerk, and others, at the preceding annual meeting, in July 1842, were not elected by ballot, but *viva voce ;* and the clerk did not bond. Because of this, it is contended that the said district is disorganised, and the power of the taxables suspended.

It appears by the case stated, that a notice of the meeting, which was to take place July 15th, 1843, "for the purposes of

electing officers and voting a tax on the assessable property of the district, for the support of the school for the ensuing year," was signed "*George L. Stockett, clerk.*" The meeting took place, and to the proceedings of that meeting, in the election of officers for the ensuing year, no objection is taken ; but the incurable error consisted, in the election of those, of the previous year.

The minutes of the proceedings of that meeting which constitute a part of the case stated, tell us, that *George L. Stockett*, was nominated, and elected *unanimously:* and surely, from this entry we are not bound to infer, that he was elected illegally? This entry, at all events, must be one of "the matters of form," which the *Act of* 1828, *ch.* 69, requires us to disregard.

According to the reasoning of the counsel for the defendant in error, the election must be pronounced to be void, unless the minutes state every thing to have been done, which the law requires to be done. The law says, that the election must be by ballot; and therefore, and in order to be valid, it is not only necessary that the election should be by ballot, but the omission to state on the minutes that it was by ballot, vitiates an election, to which no other exception can be taken. It will not be denied, that in some of the old cases, to which we are referred by the counsel, expressions may be found attributed to the court, which would seem to justify this reasoning. Those expressions are generally to be found in cases, where, by their own showing, the acts done were contrary to law, and seem to have been used without reflecting, that as they might be understood, they would take from us much valuable law.

The election does not appear to have been by ballot; and moreover, it does not appear that the clerk gave bond, as the act of 1825 requires. Now these objections, which are designed to take from the clerk his office, are urged in a suit to which the clerk is no party. See 7 *Sargeant & Rawle.*, 392. Besides, the act of 1825, ch. 162, sect. 9, provides, that the clerks, &c., of each district, shall hold their office until the next annual meeting, and a new election shall be made.

Now, we find, that *George L. Stockett* was in the office, acting as clerk, in July 1842; and are we, in this suit, to which he was no party, and grounding our opinion upon this statement, to determine, that he was not legally in the office, the duties of which he was discharging?

In the case of corporations it is considered, that the recording of an official bond is not essential to its validity, unless it be so expressly declared. A vote or resolution appointing an agent, need not be entered on the minutes, but may be inferred from the permission, or acceptance of his services. See *Angel & Ames on Corporations*, 157, and the case there referred to, of *Dunn, vs. Saint Andrews Church*, 14 *Johnson's Reports*, 118. The authority continues, "we need hardly add, that if in such case the agent is held to be duly appointed, as between the corporation and himself, *a fortiori*, he would be, as between the corporation and third persons."

"Persons acting publicly, as officers of a corporation, are presumed to be rightfully in office; acts done by a corporation, which presuppose the existence of other acts, to make them legally operative, are presumptive proofs of the latter; and although the charter or act of incorporation prescribes the mode in which its officers shall be elected, and an election contrary to it, would unquestionably be *voidable*, yet if the officer has come in under *color* of right, and *not in open contempt of all rights whatever*, he is an officer *de facto, &c.*" See *Angel and Ames*, 158, 159.

An act of Assembly, confers upon the mayor and aldermen of the city of Annapolis, authority to take the acknowledgment of deeds, which are designed to transfer the title to land from the grantor to the grantee. Surely a party who claims under a deed so acknowledged, is not, in order to make the deed evidence, to prove that the mayor was what he professed to be, that is, was duly elected to the office.

It seems however to be thought, that these trustees, clerks, &c., are to be regarded as special agents, deriving from the law special authority, and their acts, in order to be valid, must be proved to be, in every respect, according to the strict letter

of the law; and that the law, with respect to the acts, and the
inferences from the acts of corporations, are not applicable to
them and their actings.   The correctness of all such notions
may be questioned.   In the case of the, inhabitants of the
fourth school district, in *Rumford, vs. Wood, 13 Mass. Re-
ports*, 193, chief justice *Parker* in delivering the opinion
of the court, admits, that they, (the school districts,) are not
bodies politic or corporate, *with the general powers of corpora-
tions;* and he tells us this may be said of towns and other mu-
nicipal societies.   He then proceeds: "they may be considered
under our institutions as *quasi* corporations, with limited pow-
ers; co-extensive with the duties imposed upon them by stat-
ute or usage," and he is brought to the conclusion, that in
construing their acts, a liberal view should be had to the end
intended to be effected.   See, also, *Angel and Ames on Corpo-
rations, p.* 18.

These authorities, in connection with the act of 1828, ch.
169, will, it is believed, justify the court in over-ruling this
and other points, which were raised by the defendant's counsel,
in the court below.

It is also objected, that the notice given by the clerk, de-
clared the object of the meeting to be, "for the purpose of
electing officers and voting a tax, &c., for the support of the
school *for the ensuing year*."   To this notice the objection
does not apply; but it is said, that the tax voted, was to "de-
fray the expenses of the district; during the past and for the
current year, such being the language used in voting the tax."

What are the powers of these people, when assembled in
district meeting, in regard to voting taxes?   "To vote a tax on
the resident inhabitants of each district, as they or a majority
of such of them as may be present, as aforesaid, shall deem
sufficient to purchase a suitable scite for the school house, and
to build, keep in repair, and furnish such school house with
necessary fuel, books, stationary, and appendages; and to re-
peal, alter, regulate and modify all such proceedings, or any
part thereof, from time to time, as occasion may require."
And surely, in the discharge of these duties, it may be neces-

sary to raise funds, in order to defray expenses already incurred, and (as required by another clause,) to "pay the salaries of such teachers." The officer must give notice, and did give notice, of the time and place of meeting. What follows, cannot make the notice illegal, although it had not stated that all the business which was actually done, (such as acting upon claims, directing the payment of them, &c.,) would be done. It may also be observed, that between the notice and the vote, there is not that difference which is suggested. The tax to be voted, is to pay what is then due, and what it is known will be due in the course of the year: and provision for the payment of what is already due, and what in the course of the year is to become due, is made by voting a tax for the support of the school; that is, to pay debts which, no matter when contracted, are payable in the course of the coming year.

Perhaps it would be desirable to ascertain, at the begininng of the year, the amount of expense to be incurred in the course of that year, and provide for the prompt payment of it; but then, this is impossible, as it cannot be known what will be the amount of expenditures for repairs, books, fuel, &c. They must sometimes purchase upon credit, and in order to pay for what is thus purchased, it is necessary to vote a tax, which is to defray expenses during the past, as well as the ensuing year; and this may, with strict propriety, be said to provide for the school for the ensuing year. This too, is an answer to the fourth objection, that the tax is retrospective, and not prospective.

We perceive nothing which warrants the objection, that the tax was not voted at the annual meeting of the taxables; nor that two taxes have been laid in the same year for the same purpose; nor does there seem to be any foundation for the objection, that the sum voted as the tax, was not raised in due proportion on all the taxable property.

As to the eighth objection, it appears that the seizure there spoken of, (if in this case it can be noticed at all,) was illegal, and for that tax he is not responsible. It can furnish no

objection to the vote, that a tax of sixteen cents, be laid in the year 1843.

The ninth objection assumes, that the collector is to be presumed not to be qualified, unless there be express proof of his qualification. He is an officer *de facto;* but if not *de jure* also, he is not in office. The defendant, himself, has sworn, (see affidavit *ante,*) that the very property for which this suit was brought, was seized by the collector, *Thomas Burgess,* for the school taxes, for the primary school district No. 30, of said district.

Of the last of the objections, which appear to have been relied on in the court below, notice has already been taken, and according to our view of such objections, this cannot be sustained. Besides this, it seems to have no foundation in law. The charter does not forbid the appointment of one of the trustees to be the clerk. It is true, that at the meeting in August 1840, it was voted, that in the opinion of the then meeting, it was incompatible in the trustees to hold another office, and perhaps, at some meeting an opinion was expressed, that the offices of trustee and clerk are incompatible; but these votes and expressions of opinion, do not *disqualify* any man.

The objections, all of them, assume, either that the legislature had no right to delegate to those appointed to exercise them, the powers given to them by the act of 1825, or, that the individuals to whom those powers have been delegated, must not only conform strictly to the provisions of the law under which they act, but that the minutes of their proceedings must show all the facts which are necessary to give them jurisdiction. "It is believed, that this would not be correct, even although the law of 1828 never had been enacted. But surely the legislature had the power to pass that law, and one object of it seems to have been, to require courts, in judging of their actings and doings, to judge them by other rules than those which are sometimes adopted, in determining upon the validity of the acts of special agents, who, by the nature and terms of their authority, can do nothing which they are

not expressly authorized to do. Much is left to the discretion and judgment of the individuals, who are to execute the law of 1825. In their judgment the law reposes, and from the nature of the trust, must repose great confidence; and it will presume every thing which it requires to be done by them, to be rightly done, until the person, who would impeach their conduct, can furnish legal and satisfactory evidence, that they have done acts not necessary to be done, in exercising the powers and discharging the duties which the law requires of them.

But if for any or all of the reasons, which have been noticed, the proceedings of the clerk and other officers were to be considered illegal and void, still, it would be necessary to reverse the judgment, and order a writ of *procedendo;* because, the case stated, (whatever might have been intended by the parties,) does not authorise the court to give judgment, either for plaintiff or defendant.

Of course, this court can give no judgment upon the statement, but reverse the judgment, with costs, and order a *procedendo.*

JUDGMENT REVERSED AND PROCEDENDO AWARDED.