# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 19, 1922.

### HARRY O. BRAWNER
### VS.
### THE SUPERVISORS OF ELECTION.

*Harry M. Benzinger* and *Henry H. Dinneen* for petitioner.

*Attorney General Armstrong* and *Allan H. Fisher* and *A. W. Woodcock* for respondent.

STEIN, J.—

This proceeding was brought to have determined by the Court of Appeals the constitutionality vel non of Chapter 448 of the Acts of 1922, Commonly called the "Bonus Act," whose purpose as set out in the title of the Act is "to provide suitable recognition for those residents of Maryland who served in the army and navy of the United States during the war with Germany, to authorize the creation of a State debt

not to exceed $9,000,000 for this purpose and to provide for the levying of taxes for paying interest on said debt and for the redemption of said debt, and providing for a referendum thereon."

The petitioner, a resident and taxpayer of Baltimore City, by mandamus against the Supervisors of Election of this city seeks to prevent the submission to the voters at the next general election to be held on November 7, 1922, of the question as to whether or not the above act "shall become effective or be null and void"; the petitioner claiming the act is unconstitutional and void (a) because the act purports to work an amendment to the Constitution of the State of Maryland in manner contrary to the mandatory provisions of Article XIV, Section 1, thereof; (b) because the act is contrary to Article III, Section 34 of the Constitution of Maryland, to wit: "* * * the credit of the State shall not in any manner be given, or loaned to, or in aid of any individual, association or corporation"; (c) because it contravenes the express inhibition of Article III, Section 59 of said State Constitution, to wit: "* * * The office of State Pension Commissioner is hereby abolished, and the Legislature shall pass no law creating such office or establishing any general pension system within the State"; (d) because its title is insufficient, misleading and does not aptly describe the purpose of said legislation contrary to the mandatory provisions of Article III, Section 29 of said State Constitution; (e) because, in providing for the levying of taxes and the expenditure of the monies to be thereby derived for the purpose named in said Act of Assembly, it contravenes Section 40 of Article III of the State Constitution which forbids the taking of private property for other than a public use and that only upon payment of due compensation, and (f) because the act which purports (by Section 21 thereof) to authorize the issuance of bonds dated August 1, 1922, and maturing January 1, 1938, contravenes Article III, Section 34 of said State Constitution, which requires the discharge of all such debts by the State within fifteen years from the time of contracting the same and because the act is class legislation authorizes the taking of private property for private purposes and (g) because, in denial of

your petitioner's right to the protection of equal laws, the said act arbitrarily confers upon a limited class of persons, capriciously and unreasonably determined to be entitled to a State gratuity, certain exclusive rights and privileges and makes them the recipients of gratuitous emoluments at the grievous cost and expense of your petitioner as a taxpayer; (h) because it operates to deprive your petitioner of his property without due process of law, in that without the tender of any compensation whatsoever to your petitioner, he will be coerced into the payment of additional taxes on his aforesaid property, the proceeds whereof will be devoted exclusively to the grant of money to private individuals in open violation of the Constitution of Maryland, and (i) because, until amended or repealed in the manner therein provided, the Constitution of Maryland constitutes a contract between said State of Maryland and your petitioner whereunder, inter alia (Bill of Rights; Articles 15, 23 and 44, Constitution; Article III, Section 40), the authority of the General Assembly is expressly limited and defined; that said act is an open, flagrant and indefensible violation thereof, and that the affirmation, as valid, of the aforesaid act would not only be inconsistent with, but repugnant to, the Constitution of the United States. This is an elaboration of Section A, supra, that the clause submitting the act to the popular vote of the whole State for acceptance or rejection is a surrender of legislative power inhibited by the State Constitution.

The Supervisors of Election, by the Attorney General, answered that neither the act nor any of its provisions contain anything inhibited by the State or Federal Constitution, setting up that the act is constitutional. The petitioner demurred to the answer; the questions involved were submitted and argued at great length and with unusual skill by counsel. I am called upon to examine and decide these questions, so that an appeal may be had, the record prepared and sent up in time for hearing by the Court of Appeals on next Thursday, June 22, 1922; because, if the act is held constitutional, the Secretary of State must take some action early next fall, which does not give sufficient time for the cause to be properly argued and considered at the September Term.

At the hearing the petitioner submitted more than one hundred authorities; the respondent a number; I found others not submitted or referred to by either.

To examine and analyze these cases, so as to determine the principle upon which the decision in each rests, within the time available for that purpose, is impossible not only because of the number of them, but because upon what I think is the important principle governing the decision in this case, the authorities, both judges and authors of equal weight, are in almost hopeless conflict. Without quoting any authorities, I hold:

1. That by the act, the State does not give or loan its credit to any individual or association or corporation, and is not inimical to Article III, Section 24, of the Constitution, which forbids the once common practice of the States endorsing its notes or bonds and the giving of them for private purposes.

2. The act does not establish any general pension system within the State, but merely follows an immemorial custom of recognizing the services of its citizen-soldiers. The State, without objection, has established pensions for judges and school teachers, made provisions for burying deceased sailors, soldiers and marines who fought in the Civil War, Code Article 88A, Section 8.

3. Section 29 of Article II holds that every law shall embrace but one subject, and that shall be described in its title, which the Court of Appeals have held to mean—

1. That the title shall not be misleading, that it must not apparently limit the enactment to a much narrower scope than the body of the act imposes, but that it need not give an abstract of the act, nor the means and the method by which the purpose is to be accomplished. Painter vs. Mattfeld, 119 Md. 467, 474-495; Ridgely vs. Baltimore, 119 Md. 567-574.

The title of the act is:

AN ACT to provide suitable recognition for those residents of Maryland who served in the army and navy of the United States during the war with Germany, to authorize the creation of a State debt not to exceed $9,000,000 for this purpose and to provide for the levying of taxes for paying interest on said debt, and for the redemption of said debt, and providing for a referendum thereon.

The petitioner claims that this title is misleading because (a) it does not refer to the provisions in Sections 4 to 16 in favor of those who wish to complete his education in any of the public, elementary, high or vocational schools of the State, or in any other institution of high school or collegiate grade in the State not run for profit; (b) it does not refer to Section 20 which creates the Military Service Recognition Board for the State of Maryland where expenses are provided for in that section.

As the purposes of the act as expressed in its title, is to give suitable recognition to residents of Maryland who served in the great war at an expense of not over $9,000,000, the section complained of are the means and method by which the purpose of the act is to be accompanied, the expense of administering the act does not increase the State debt as it comes out of the loans authorized by the act. The title does not violate any constitutional provision.

4. If the State can pension its judges or school teachers, and can provide a fund for burying its marines and soldiers of the Civil War, each of which is a public purpose, the giving of a bonus or pension to those who served in the great war also is a public purpose; so that in this respect the act in question does not violate any provision of either the State or Federal Constitution.

5. At the hearing all counsel conceded that if under the provisions of the act, part of the loan authorized would not be paid within fifteen years from the date of contracting the same, this would not destroy the act, but would make void the serial M of bonds, Section 22.

6. Class legislation is allowed where all of a class is effective thereby, while the act confers a bonus upon a certain class of people, i. e.:

All members of such class are affected thereby.

7. The objection that the act deprives the petitioner of his property without due process of law is not sound. The act appropriates the State's monies to be used by taxation for a public purpose. Supra Sub-section 4.

8. The last of the objections urged is that the act is void because it is not to become a law unless and until approved by a majority vote of all voters at the next general election to be held on Tuesday, the seventh day of November, 1922, which the petitioner urges is a surrender of the Legislature to the people of its power to make laws, which cannot be done, as under our form of government the people of Maryland, by the Constitution, gave to the Legislature the sole power to make the laws.

The provision attacked, erroneously called in the argument "A State Wide Referendum," is set out in Section 29 of the act and its substantial parts are:

Section 29. And be it further enacted, that this act shall, at the general election to be held on the Tuesday after the first Monday in November, 1922, be submitted to the legal and qualified voters of the State for their approval or rejection.

If a majority of votes cast upon the question shall be against the soldiers' bonus, then this act shall be null and void and of no effect whatever, but if a majority of the votes cast upon the question be in favor of the soldiers' bonus, that all the provisions of this act shall become effective as herein provided.

The petitioner claims that our Government is a representative one under which the people have lodged in the General Assembly, consisting of the Senate and House of Delegates, all legislative power, and that submission to popular vote of all the people of a general law is inhibited by the Constitution of Maryland.

Article 8 of the Declaration of Rights contains the following, viz.:

The legislative, executive and judicial forms of government ought to be forever separate and distinct from each other. Section I of Article III of the Constitution is:

The Legislature shall consist of two distinct branches, a Senate and a House of Delegates and shall be styled the General Assembly of Maryland.

The petitioner claims that these above provisions make void the act in question, and concedes that Article 16 of the Constitution has no bearing on this question here presented.

I think this is the first time this question in its exact form has been presented in Maryland, although there are a number of cases in which the Court of Appeals has adopted the general language, that "the Legislature cannot surrender its power to the people," and in common with all other States in which the rule has been either quoted or laid down, the Court of Appeals has recognized that there are exceptions to the rule, notably in local option cases and in cases of purely local concern.

It therefore seems to me a short review of the general doctrine might not be inappropriate so as to learn the general trend of opinion and weight of authority.

In Willoughby on Constitutional Law, Section 77, the author says:

In the courts of the States, general direct legislation (referendum) laws were in a few early cases held unconstitutional on the ground that their effect is to establish a democratic in place of a republican; that is, representative form of government. Thus, for example, in Rice vs. Foster, the Court of Delaware declared, "Although the people have the power, in conformity with its provisions, to alter the constitution, under no circumstances can they, so long as the Constitution of the United States remains the paramount law of the land, establish a democracy or any other than a republican form of government." And this, the court went on to declare, would in effect be done, should the electorate be given a direct legislative power.

In addition to being in violation of the Federal Constitution, direct legislation laws of a general character have frequently been held void as in violation of the State Constitution, in that they attempt to delegate to the people that law-making power which has been intrusted to the Legislature. In answer to the point that the law-making power was not thus transferred, but simply the operation of the statutes in question made dependent upon the happening of a particular event, namely, the approving vote of the people, the Court of New York, in Barto vs. Himrod, said:

"It is not denied that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain. But such a statute, when it comes from the hands of the

Legislature, must be a law *in praesenti* to take effect *in futuro*. The event or change of circumstances on which a law may be made to take effect must be such as in the judgment of the Legislature affects the question of the expediency of the law; an event on which the expediency of the law in the judgment of the law-makers depends. On this question of expediency the Legislature must exercise its own judgment definitely and finally. But in the present case no such event or change of circumstances affecting the expediency of the law was expected to happen. The wisdom or expediency of the free-school law, abstractly considered, did not depend on a vote of the people. If it was unwise or inexpedient before vote was taken, it was equally so afterward. The event on which the act was made to take effect was nothing else than the vote of the people on the identical question which the Constitution makes it the duty of the Legislature itself to decide. The government of the State is democratic, and it is a representative democracy, and in passing general laws, the people act only through their representatives in the Legislature."

And in the second volume of his work, Section 779, sums up the question, thus:

As to whether the so-called "referendum" employed in some of the States is an unconstitutional delegation by the Legislature of the law-making powers to the people, there is a conflict of authority. The weight of authority would seem to be that the submission to the electorate of the entire State as ·to whether a measure shall or shall not become a law is void.

12 C. J., Section 365, page 884, we have this statement:

When an act is clothed with all the forms of law and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency.

It has even been held that the contingency may be made to consist in the approval of the act by a vote of the people of the entire State. But by the great weight of authority, the enactment of the statute itself may not be delegated nor made contingent on the action of officers or people. The act must be complete in itself, must be made the law by the Legislature, and only its effect and operation may be dependent on the contingency. In 160 Mass. 586, the "justices" advised that an act like that under discussion was unconstitutional. They were not a unit on this and Mr. Justice Holmes wrote a vigorous dissent. The authorities of this opinion in 23 L. A. R. 113 is a full collection of all the cases and at page 114 contains the following:

This note contains a full collection of the cases at page 114, quotes from Cooley on Constitutional Limitations, page 120, the following, viz.:

"If it is not unconstitutional to delegate to a single locality the power to decide whether it will be governed by a particular charter, must it not quite as clearly be within the power of the Legislature to refer to the people at large from whom the power is derived, the decision upon any proposed statute affecting the whole State? Can that be called a delegation of power which consists only in the agent or trustee referring back to the principal the final decision in a case where the principal is the party concerned." The note concludes as follows:

While the eminent author considers the weight of authority up to the time of his writing to be against him, he declares that the decision of Smith vs. Janesville, 26 Wisc., appears entirely sound and reasonable. The question is therefore entirely unsettled with the weight of authority against the delegation or reference to the people, but with almost equal authority on the other side.

The case of the State vs. Janesville, 26 Wisc. 291, referred to above was a local option case, in which the court held that there was no difference in principle between referring a local option statute to a local community and a general statute to the whole community.

This case was affirmed in State vs. Frear, 142 Wisc. 320, 20 A. & E. Am. Case 633, but in a dissenting opinion, it was said:

"The idea that a vote of the people favorable to a proposed law without which it cannot be a law complete in itself, is a contingency upon which a law complete in itself is dependable for vitality is generally rejected."

The majority followed 26 Wisc., because it had been in force for so long a time.

In his dissenting opinion Mr. Justice Holmes referred to the fact that Chief Judge Parker of Massachusetts and Chief Judge Redfield of Vermont and Judges Cooley of Michigan and Dixon of Wisconsin, the chief judge, agreed with him.

Black on Constitutional Law lays down the general rule as above quoted, names three exceptions, viz.:

1. Local option laws.

2. Grants to municipal bodies of legislative powers for local purposes.

3. General laws which are to take effect upon a future contingency other than a ratification by popular vote, and on page 377 says:

"There is no provision in the American system for a referendum on general subjects of legislative actions; unless it may be in very few and exceptional instances. The Legislature is elected and authorized to make the laws. For that purpose the legislative power of the people is confined to them. That power can not regularly be rescinded and exercised by the people themselves. Neither can it be referred back to the public by the Legislature in any particular instance. Delegations of legislative powers to the people at large, from whom it was derived, is just as much against the spirit of the Constitution as a delegation of it to one citizen. Nor can the Legislature be allowed to shirk the responsibility of deciding upon the law which should be made."

For these reasons it has been held that the law-making body has no power, in enacting a general law applicable to all the people of the State, to make its taking effect conditional upon the casting of a popular vote in its favor. For instance, the Legislature in enacting a law granting the right of suffrage to women has no constitutional power to provide that the act shall take effect throughout the State on its acceptance by a majority vote of the electors. But a general law may be made to take effect upon some contingency (other than ratification by popular vote) as to whom it shall take effect in a particular locality, or made independent upon a future contingency, as to whether it shall take effect at all; even though that contingency be some action on the part of the Legislature of another State; as in case of a reciprocity claim relating to the conditions on which firms or corporations shall be admitted to do business in the State.

Possibly one of the best statements of the rule is found in the following:

"While the power and responsibility of legislation remain where the Constitution has placed them, a proposed measure before it can become a law must pass through the ordeal of a public and deliberate discussion in the Legislature. Public opinion will prevail—but it will be only their deliberate, permanent and originally expressed public opinion. It is this opinion alone which the Constitution designed should govern. Such a government secures deliberation and responsibility in legislation and affords protection against the despotism of official rulers on the one hand, and of irresponsible numerical majorities on the other. It has been appropriately named the flower of civilization."

This brings us to a discussion of some of the more important of the Maryland cases, in which the general rule was discussed, the first of which were the two cases of Burgess vs. Pue, 2 Gill, 11 and 183.

Burgess vs. Pue, 2 Gill 183, was an action of replevin to recover one yoke of oxen seized by the collector for non-payment of school taxes for District No. 30, levied under Chapter 162 of the Acts of 1825, which the owner of the oxen alleged was unconstitutional and void, because a delegation by the Legislature of its powers to the people.

The act in question is entitled: "An Act to provide for the public instruction of youth in primary schools throughout this State," of which Section 29 is as follows:

"And be it enacted, that at the next election of delegates to the General Assembly, every voter when he offers to vote, shall be required by the judges of election to state whether he is for or against the establishment of primary schools, and the said judges shall record the number of votes for and against primary schools, and make returns thereof to the Legislature, during the first week of the session; now if a majority of said voters in any county shall be in favor of the establishment of primary schools, as is therein provided for, then and in that case, the said act shall be valid for

such county or counties; otherwise of no effect whatsoever.

"Sec. 30. And be it enacted, that if a majority of the voters of any county in this State shall be against the establishment of primary schools, as established by this act, then and in that event the said act shall be void as to that county."

The court held the act constitutional under a case between the same parties, 2 Gill 11—in which the Court of Appeals said:

"We think there is no validity in the constitutional question which was raised by the appellee's counsel, in the course of his argument, relative to the competency of the Legislature to delegate the power of taxation to the taxable inhabitants for the purpose of raising a fund for the diffusion of knowledge and the support of primary schools. The object was a laudable one, and there is nothing in the Constitution prohibitory of the delegation of the powers of taxation, in the mode adopted, to affect the attainment of it; we may say that grants of similar powers to other bodies for political purposes, have been coeval with the Constitution itself, and that no serious doubts have ever been entertained of their validity. It is, therefore, too late at this day to raise such an objection. The ground of the objection taken in the argument to the constitutionality of the tax seems to be that the act of the Legislature delegating the power of taxation to the taxable inhabitants was a violation of the fourth and twelfth sections of the Bill of Rights; the first of which provides that all persons invested with the legislative or executive powers of the government are trustees of the public, and as such accountable for their conduct, and the last that no extra charge, tax fee or fees ought to be set, rated or levied under any pretense without the consent of the Legislature. It is not perceived how the act in question can be decreed a violation of either of these principles of fundamental law. The tax was certainly levied with the consent of the Legislature, because the power to impose it emanated from the legislative department of the government and was expressly given by a law passed for that purpose, and there is nothing in it which can be considered in the slightest degree impairing the responsibility of the law-making power

to their constituents for the due and faithful execution of the trust confided in them, because if deemed unwise or inexpedient, an expression of the popular will to that effect was all that was necessary to procure its repeal."

The next case was Alexander vs. The City, 5 Gill 383-394, in which the Court of Appeals affirmed the above case of Burgess vs. Pue, 2 Gill 11, holding, among other things, that the General Assembly possesses the power to delegate to the Mayor and City Council of Baltimore and to the commissioners or levy courts of the counties authority to open or lay out streets and roads, when in their opinion, such an improvement is required by public convenience, and in various forms acknowledged by both the legislative and judicial departments of the government, and is sanctioned by a practical exposition of the Constitution, as exhibited in the usage and practice of the State for a long series of years.

The act attacked in this case authorized the City of Baltimore to lay out, open and extend streets, and to levy taxes to raise the money to pay the cost and expenses thereof.

The question in Hammond vs. Haines, 25 Md. 541, was whether an act was constitutional which referred to the qualified voters of the Borough of North East in Cecil County—the question whether a license should be issued to any person to sell liquor in that borough, and page 562 said:

"In deciding this law to be constitutional, the court is not to be understood as embracing within its views the character of a law which would on a broader or more enlarged sense entrust its passage or existence to popular vote. Law (as has been most aptly defined) is the result of the legitimate action of the legislative power. The Constitution wisely distributes the powers of government among several and distinct departments, and the limits of these can not be extended, or an encroachment of one upon the other permitted without a violation of the social compact and a derangement of the social order. The General Assembly, composed of the Senate and House of Delegates, is in this State the only law-making power. The popular will is not to be disregarded. And that, always in theory and generally in practice, is reflected by the representatives of the people

on the legislative department of the government. With them is lodged the power of making laws for the government of the people, and the due responsibility of the representative to his constituent is best maintained and stable and wholesome legislation secured, by avoiding judicial refinement by which the power is extended to any whom the Constitution has not invested with legislative acts."

In the City of Baltimore vs. Clunet, 23 Md. 449, 467, the constitutionality was involved by an ordinance of the city opening Holliday street from Baltimore to Second street. The ordinance was not to take effect until certain things therein named were to be done and McClelland and Raborg, or their representatives, shall have given their written assent to the provisions of a section of the ordinance. This, it was claimed, made the ordinance void, because the city could not delegate its legislative power over the subject and made the ordinance depend for its efficiency upon the will of others.

On page 469 the court held: This was not delegating to others a discretion vested by law in the Mayor and City Council. *A valid law may be* passed to take effect upon the happening of a future contingent event, even when that event involves the assent of its provisions by other parties. That was decided in The Mayor and City Council of Baltimore vs. The N. C. R. W. Co., 21 Md. 93.

This principle was approved by the Court of Appeals in State vs. Kirkly, 29 Md. 85-102, and is the principle invoked by the respondents.

The next case is that upon which the respondent chiefly relies, that of Fell vs. The State, 42 Md. 71, in which it appears that the appellant was indicted for selling spirituous liquors on October 5th, 1874, within the Third Election District of Caroline County in violation of the provisions of the Act of 1874, Ch. 453.

The defense was that the act is unconstitutional and void because it is alleged to be an attempt by the Legislature to delegate to the legal voters of the district the power of making the law. By the Constitution, the legislative power is delegated to the General Assembly exclusively, and that the power thus delegated can not constitutionally be exercised by any other body or authority, is universally conceded.

The fourth section of the act provides that it shall take effect immediately after it shall have been determined by a majority of the people on any one or more of the election districts of the counties named, whether or not spirituous or fermented liquors shall not be sold as before provided.

Chief Judge Bartol writes the opinion, holding the law good. Judge Bowie wrote an elaborate dissenting opinion, in which he reviews the earlier cases of the Court of Appeals, explaining and distinguishing them, in which, among other things, he said (page 116) that the weight of judicial authority in Pennsylvania may therefore be regarded as equipoised.

In the opinion of the court, the Chief Judge said (page 85, etc.) :

"Now, what has been delegated to the voters by this Act of Assembly? Certainly not the power to make the law, or to repeal existing laws. They are called on by Section 1 simply to express, by their ballots, their opinion or sentiment as to the subject-matter to which the law relates. They declare no consequences, prescribe no penalties and exercise no legislative functions. The consequences are declared in the law, and are exclusively the result of the legislative will. The Act of Assembly is 'a perfect and complete law as it left the halls of legislation, and was approved by the Governor'; but by its terms it was made to go into operation in any district upon the contingency of a majority of the legal voters within the district being ascertained to be in favor of the prohibition contained in Section 2. The question before us, therefore, resolves itself simply into this: May the Legislature constitutionally enact a law and make its operation depend upon the contingency of the popular vote? It has never been denied that 'the Legislature may provide that an act shall not take effect until a future day, or until the happening of some particular event, or in some contingency thereafter to arise, or upon the performance of some specified condition.' A familiar example of such legislation may be found in the Acts of Congress, which came under review before the Supreme Court in Brig Aurora vs. U. S., 7 Cranch, 382."

It was decided by this court that "a valid law may be passed to take effect upon the happening of a future contingent event, even where that event

involves the assent of its provisions by other parties." Baltimore vs. Clunet, 23 Md. 469. In support of this proposition many cases might be cited.

It has been well remarked by a learned judge: "If the Legislature may make the operation of its act depend on conditions, it must be for them to judge in what contingency or upon what condition the act shall take effect. They must have the power to prescribe any they may think proper; and if the condition be that a vote of approval shall first be given by the people affected by the proposed measure, it is difficult to see why it may not be as good and valid as any other condition whatever. There can be no inherent vice in the nature of such a condition, which shall serve to defeat the act, when it would be legal and effectual, if made to depend upon some other event. To say in such a case that the act is made by the voters and not by the Legislature is to disregard all proper distinctions, and involves an utter confusion of ideas upon this subject."

"Wherever the contingency upon which a law is to take effect depends upon the action of third persons, it might be said with equal truth that the law was enacted by those persons instead of the Legislature." Bull vs. Read, 13 Grat. 90, 91.

In the same case Judge Lee uses the following argument, which seems to us to present the question in a very clear and forcible manner:

"It will not be questioned that it is entirely competent for the Legislature to provide for taking a vote of the people or any portion of them, upon a measure directly affecting them, and if a given number be in favor of its adoption, to enact a law thereupon, carrying it into effect. And there would seem to be but little difference in substance, in a reversal of the process, by first enacting the law in all its parts; but providing that its operation is to be suspended until it be ascertained that the requisite number of the people to be affected by it were in favor of its adoption." Bull vs. Read, 13 Grat. 88.

We refer also to the opinion of Redfield, C. J., in State vs. Parker, 26 Vt. 365, where the same views are expressed.

It must be borne in mind that the question with which we are dealing is one of constitutional power. As to the wisdom or expediency of such legislation we are not authorized to judge. These are questions which under our system of government are exclusively confided to the Legislature, and so long as that department acts within the constitutional limits of its authority, this court has no power to sit in judgment on the wisdom, or expediency of its action.

The constitutional question here involved is not a new one in this State. In our judgment it has been distinctly passed upon by our predecessors in this court.

By the Act of 1825, Ch. 162, a general system of primary schools was established. Sections 29-30 of that act were as follows:

"Sec. 29. Be it enacted, that at the next election of delegates to the General Assembly, every voter, when he offers to vote, shall be required by the judges of election to state whether he is for or against the establishment of primary schools, and the said judges shall record the number of votes for and against primary schools, and make return thereof to the Legislature, during the first week of the session, and if a majority of the said votes in any county shall be in favor of the establishment of primary schools as is therein provided for, then, in that case the said act shall be valid for such county or counties, otherwise of no effect whatever.

"Sec. 30. And be it enacted, that if a majority of the votes of any county in this State shall be against the establishment of primary schools, as established by this act, then and in that case the said act shall be void as to that county."

This law came before the Court of Appeals in Burgess vs. Pue, 2 Gill, 11. Its validity was assailed on the same ground as is now urged against the Act of 1874. That is, that its operation in any county was made to depend upon the result of a popular vote. It was urged there as here, that the effect of Sections 29 and 30 was to delegate the law-making power to the voters, which the Legislature could not constitutionally do. After a most full and able argument, the court decided that the law was valid, and that there was no validity in the constitutional objection.

The same question again arose in Burgess vs. Pue, 2 Gill, 254, and again the constitutionality of the law was maintained. It would be difficult to find a more solemn and authoritative decision upon any question than is presented by those cases; and it would be equally difficult to distinguish the principle then decided from that involved in the present case, so far as it con cerns the question of the supposed delegation of legislative power by a submission to the popular vote to determine the contingency upon which a law is to go into operation.

Again, in Hammond vs. Haines, 25 Md. 541, this court by a unanimous decision held the Act of 1864, Ch. 348, to be valid and constitutional. That act submitted to the qualified voters of the Borough of North East, to decide by ballot, whether any license should be granted to sell spirituous or fermented liquors within the borough.

The position of the appellant finds no support in the decided cases in Maryland. In other States there has been much conflict in the decisions. In some of them the courts have held laws to be invalid because their operation was made to depend upon the contingency of a popular vote. Among the earliest of these cases are Parker vs. Commonwealth, 6 Barr (Pa.) 507, decided in 1847; Rice vs. Foster, 4 Harr. (Del.) 479, decided about the same time, and Barto vs. Himrod, 8 N. Y. 483. These were followed by the courts of Indiana, Iowa, Michigan and some others. We do not consider it necessary to refer to these cases more particularly. In many of the States decisions have been rendered by the courts of last resort in accordance with the ruling of this court in Burgess vs. Pue and Hammond vs. Haines. In Pennsylvania the leading case of Parker vs. Commonwealth, which furnished the basis of many of the decisions in other States cited by the appellant, has recently been overruled and reversed by the Supreme Court of the same State in Locke's Appeal, 72 Pa. St. 491. This last decision by that able court was made after full argument and an examination of the course of judicial decisions upon the question, and is in accordance with the conclusions we have expressed.

In the examination of the question before us, we have kept in view the cardinal principle, which must always govern the courts, when called on to pass upon the constitutionality of the acts of a co-ordinate department of the government.

Every intendment ought to be made in support of the legislative enactment, and it is not to be declared invalid, except for the plainest and most conclusive reasons. In this case we have failed to discover any sufficient grounds to justify us in declaring the Act of 1874, Ch. 453, unconstitutional or inoperative. So to pronounce would, in our judgment, be contrary to sound reason, as well as at variance with the previous decisions of this court.

There can be no question of the power of the Legislature to fix the time when a law shall go into effect.

In Slymer vs. The State, 62 Md. Ch. 237-241, the Court of Appeals approved the above case.

The next important case is that of Bradford vs. Lankford, 73 Md. 428, upon which the petitioner chiefly relies, in which the Court of Appeals declared unconstitutional the Act of 1890, Ch. 629, which submitted to the voters of Somerset County the question as to whether or not the people of the whole State should be allowed to scoop or dredge oysters within the waters of that county; the court holding this right was the right of all people of the State and that their rights could not be made to depend upon the wishes of the voters of Somerset County, who were only part of all the people. The court, through its Chief Judge (p. 450), said: "The question upon us is whether this statute is a valid exercise of the legislative power, or, in other words, whether the Legislature had the power to submit such a question to the voters of the districts named in the act and make the operation of the act depend upon the contingency of a popular vote," and then restated the general principle with which all authorities agree, and said: "Now, it can hardly be necessary to say that by the Constitution of the State the power to enact laws belongs to the General Assembly composed of the Senate and the House of Delegates, and this being so, it is a well-settled principle of constitutional law that the power thus delegated can not be redelegated to the people themselves. Our government is a representative government, and to the members of the General Assembly the people have confided the power to pass

such laws as they in the exercise of their judgment may deem best for public interests, and they have no power to substitute the judgment of others in matters of legislation for the judgment of these to whom this sovereign trust has been committed. But, fundamental as this principle may be, it is subject to certain qualifications, some of which are well recognized both in this country and in England."

This case was approved in the last case in our Court of Appeals, decided December 2nd, 1920, i. e., that of Levering vs. The Supervisors, 137 Md. 281.

The Act of 1920, Ch. 552, submitted to the voters of the City of Baltimore only the question as to whether or not a Public General Law should be repealed and re-enacted with amendments. It was conceded that this could not be done. The question to be decided was whether or not the act in question was a general or a local act. The Court of Appeals held that it was general and not local and therefore unconstitutional, and said: "There was considerable argument pro and con with regard to the referendum contained in the act, and that presents a matter with which this court is not now immediately concerned, and no opinion is expressed in regard thereto."

These are the important Maryland cases bearing on the question.

I have cited the authorities thus fully and at length so as to show the difficulty of this question at issue, the conflict of opinion between eminent authority and the reasons underlying the opinions rendered. From them I find:

1. That it is extremely doubtful that the weight of authority is against the question at issue; it seems to be as nearly balanced as can be in any difficult constitutional question, which depends not only upon legal principle but upon questions involving the theory of government.

2. That even admitting the numerical weight of the authorities is against the proposition, certainly the most eminent of the authorities are in favor of it, among whom are Mr. Justice Holmes, Chief Judge Redfield of Vermont, Judge Dixon of Wisconsin, Judge Cooley of Michigan (one of the great authorities), Chief Judge Parker of Massachusetts, and our own Chief Judge Bartol, an eminent authority of our own State.

3. That our Court of Appeals have never overruled the decisions of Burgess vs. Pue and Fell vs. State; that the other cases discussed are either within the class of conceded exceptions, e. g., local option laws or local matters, or are an attempt to have part of the people pass upon rights of all the people as in Bradshaw vs. Lankford and Levering vs. The Supervisors, supra, and the general language used in them is not decisive.

4. That for the Legislature to pass an act complete in all its terms as is that under discussion, leaving nothing for all the people to do, save by their majority vote to say that it shall or shall not take effect, is not a surrender of any legislative power, but at best a contingency, upon the happening of which a complete act shall become a law.

Under the act in question the sole law-making power says to the people of Maryland: "Here is a law complete in all its terms and details. It shall take effect only upon one contingency, that is, that a majority of the people by their vote at the next general election in November, 1922, say so."

This is not and can not be a surrender of legislative power and can not be a refusal by the Legislature to carry out any of its sovereign rights or duties, is certainly not in conflict with or subversive of our representative form of government.

Orders will be signed overruling the demurrer to the answer and dismissing the petition.